# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**Lisa Garrett,**
**Individually and as**
**Administrator of the Estate**
**Of Nathan Alexander Garrett**

**Case No.   1:23CV2011**

**JUDGE PAMELA A. BARKER**

**Plaintiff,**

        –vs–

**MEMORANDUM OPINION & ORDER**

**Morgan County Sheriff's Office,**
**et al.,**

**Defendants.**

Currently pending are the Motions to Dismiss filed by Defendants Ohio National Guard c/o Major General John Harris, Jr., Captain Angela Wilker, First Sergeant Jack Gillum, Lieutenant Colonel Lawrence Bogan (hereinafter referred to collectively as "the ONG Defendants"). (Doc. Nos. 115, 116.)  Plaintiff Lisa Garrett, Individually and as Administrator of the Estate of Nathan Alexander Garrett, (hereinafter "Plaintiff") filed a combined Brief in Opposition on February 6, 2025, to which the ONG Defendants filed Replies on March 6, 2025.  (Doc. Nos. 122, 124, 126.)

Also pending are Plaintiff's (1) Motion to Strike ONG Defendants' October 24, 2024 Notice of Substitution (Doc. No. 121); and (2) Motion to Supplement Plaintiff's Brief in Opposition to the ONG Defendants' Motions to Dismiss (Doc. No. 130.) The ONG Defendants filed a Brief in Opposition to Plaintiff's Motion to Strike on March 6, 2025, to which Plaintiff did not reply.  (Doc. No. 125.)

For the following reasons, Plaintiff's Motion to Supplement (Doc. No. 130) is DENIED. Defendants Wilker, Gillum, and Bogan's Motion to Dismiss (Doc. No. 115) is GRANTED.

Defendants Ohio National Guard's Motion to Dismiss (Doc. No. 116) is GRANTED IN PART and DENIED IN PART, as set forth herein.  And, lastly, Plaintiff's Motion to Strike ONG Defendants' Notice of Substitution (Doc. No. 121) is DENIED.

## I.     Factual Allegations

Plaintiff's First Amended Complaint sets forth the following factual allegations.[1]  In October 2021, Nathan Alexander Garrett ("Garrett") was a member of the Ohio National Guard ("ONG"), 2nd Battalion, 174th Air Artillery Defense Brigade ("AAD"), located on Hawk Drive in McConnelsville, Ohio.  (Doc. No. 44 at ¶¶ 7, 23.)  Defendants Cruz Allen, Trance Van Liere, Thomas Develin, James Meade, Christopher Leach, and Jordan Haas (hereinafter referred to collectively as "the Guardsmen Defendants") were also members of the ONG AAD at all relevant times.  (*Id.* at ¶¶ 7, 11-16.)

Plaintiff alleges that the ONG "is and was, at all times relevant herein, an agency of the State of Ohio, the administration of which is the responsibility of [Defendant] Major General Harris."[2]  (*Id.* at ¶ 7.)  *See also id.* at ¶ 24.  Plaintiff alleges that "Major General John C. Harris, Jr. is responsible for the command of the ONG and supervises the day-to-day operations and management of the readiness, fiscal, personnel, equipment and real property resources of the ONG."  (*Id.* at ¶ 7.)

_____

[1] In their Motions, the ONG Defendants seek dismissal of Plaintiff's claims pursuant to both Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  As discussed *infra,* although not entirely clear, it appears that the ONG Defendants raise factual attacks under Rule 12(b)(1), pursuant to which a court may allow "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  Apparently in relation to the ONG Defendants' Rule 12(b)(1) arguments, both the ONG Defendants and Plaintiff attach various Declarations and other documentary evidence to their respective filings.  This Court, however, may not consider any such materials in resolving the ONG Defendants' Motions to Dismiss to the extent Defendants seek dismissal under Rule 12(b)(6).  Thus, the Court makes clear that, in reciting the factual allegations in Section I of this Opinion, the Court relies solely on the allegations in Plaintiff's First Amended Complaint.  The Court will address the Declarations and other documentary evidence filed by the parties, as necessary, in connection with the parties' Rule 12(b)(1) arguments only.

[2] Plaintiff acknowledges, however, that "[t]he ONG also serves, when properly designated, [as] a reserve component of the U.S. Military consisting of a variety of combat, combat support, and combat service support units headquartered in Columbus, Ohio." (*Id.* at ¶ 7.)

2

According to the Amended Complaint, at all times relevant herein, Defendant Jack Gillum was the "ONG First Sergeant of the AAD;" Defendant Angela Wilker was the "ONG Captain of the AAD;" and Defendant Lawrence Bogan was "the ONG Commanding Officer of the AAD." (*Id.* at ¶¶ 8, 9, 10.)

On October 20, 2021, Garrett and the Guardsmen Defendants "were generally present in McConnelsville, Morgan County, Ohio, under orders from the ONG for extended basic training – also known as 'drill' – from Tuesday, October 19 through Sunday, October 24."[3] (*Id.* at ¶¶ 23, 24.) Garrett, Allen, Develin, Meade, Leach and Haas[4] were released from "drill" at around 5:30 p.m. on that day, and "given permission to spend the evening socializing at an off-base residence as they had done on multiple occasions in the past." (*Id.* at ¶ 26.) Garrett, Allen, Develin, Meade, Leach, and Haas traveled in separate private vehicles off the AAD base to a private residence owned by Meade's grandmother (hereinafter referred to as "the Cabin"). (*Id.*) According to Plaintiff, "[t]he unit of guardsmen were planning on an evening of drinking and discharging handguns, as they had engaged in on many occasions in the past." (*Id.*)

During the remaining daylight hours on October 20, 2021, a group of the soldiers (including Allen, Develin, and Leach) were shooting handguns from the porch of the Cabin into a hill in the distance. (*Id.* at ¶ 27.) As the daylight faded, the group moved inside the Cabin where they continued

---

[3] Plaintiff further alleges that: "The particular crew that the Guardsman Defendants (and Nathan Garrett) were part of is the missile artillery unit 'Bravo Battery.' There are two components of each of the four batteries at the 174th, a mobile radar unit, and a mobile missile unit. In Bravo Battery, the radar unit's code name was 'Golf,' and the missile unit's [code name was] 'Sierra.' Garrett and the other six soldiers at the Cabin that night were all assigned to the Golf radar unit." (*Id.* at ¶ 25.)

[4] Defendant Van Liere was earlier granted leave to be off the entire day on October 20, 2021 to attend a funeral. (*Id.* at ¶ 26.) As set forth *infra*, later that evening, Van Liere and his friend, Defendant Brenna Nye, joined Garrett, Allen, Develin, Meade, and Haas at the off-base residence where the incident involving Garrett occurred.

3

to drink alcohol and socialize. (*Id*. at ¶ 28.) Van Liere and Defendant Brenna Nye arrived at the Cabin between 10:00 and 11:00 p.m. (*Id*.) Van Liere was highly intoxicated upon his arrival. (*Id*.) Nye was not intoxicated upon arrival, but began consuming alcoholic beverages for the rest of the evening despite being under the legal drinking age. (*Id*.)

As the evening progressed, Nathan Garrett, the Guardsmen Defendants, and Nye "made their way to the kitchen table telling stories and drinking alcohol." (*Id*. at ¶ 29.) A Ruger 9mm semi-automatic pistol owned by Leach, and a Glock 19 9mm and .40 caliber Sig 420 handgun owned by Develin, were on the kitchen table. (*Id*.) Additionally, several rifles owned by Meade were "located in various areas around the Cabin." (*Id*.)

Leach and Develin discussed and demonstrated the different components of the three handguns and began to remove the magazines, pull back on the slides, reinsert empty magazines, close the slide and pull the trigger to achieve what is known as a "dry fire" with what should be an unloaded weapon. (*Id*. at ¶ 30.) Plaintiff alleges that, "[a]t this point, the circumstances transformed … to a disturbing and dangerous variation of" Russian Roulette." (*Id*. at ¶ 31) Specifically, Plaintiff alleges that, "instead of safely dry firing the weapons in a safe direction (such as the floor), those around the table began to pass a gun from one person to another." (*Id*.) "When it was handed-off, the recipient would eject the magazine, pull the slide back to purportedly verify the gun was not loaded, replace the empty magazine, and cause the slide to return to position resulting in what is supposed to be an unloaded, but charged weapon." (*Id*.) "The person would then take the firearm, point it at their temple, and while consuming more alcohol, dry fire the trigger resulting in the 'click' of the firing pin." (*Id*.)

4

Plaintiff alleges that the Guardsmen Defendants had previously engaged in this "game" or "exercise" at the Cabin.  (*Id*. at ¶¶ 34.)  When doing so, the "dry-fires" would not just be to the individual's own temple, but would "also involve aiming and dry-firing at objects within the Cabin (a dart board) as well as pointing and firing at each other."  (*Id*. at ¶ 33.)  Defendant Develin allegedly created this game and he, Leach, and Meade were the primary participants.[5]  (*Id*. at ¶ 34.)  Plaintiff alleges that, "[w]henever encouraged to participate in these exercises, Nathan Garrett refused."  (*Id*. at ¶ 33.)

At approximately 11:00 p.m. on October 20, 2021, Garrett was standing in the kitchen, leaning against the counter, facing the kitchen table where the Guardsman Defendants and Nye were seated. (*Id*. at ¶ 35.)  The Guardsman Defendants and Nye later explained that they were simultaneously looking in different directions when they heard Leach's gun discharge.  (*Id*.)  All individuals then looked in Garrett's direction to see him fall to the floor with blood pouring out of a gunshot wound to his head.  (*Id*.)  At approximately 11:05 p.m., one of the Guardsmen Defendants called 911.  (*Id*. at ¶ 36.)

Paramedics arrived first, followed by Defendant Morgan County Sheriff's Deputy Alex Mayle.  (*Id*. at ¶¶ 36, 38.)  Plaintiff alleges that, before the paramedics arrived, the Guardsman Defendants and Nye coordinated their "stories" to be as similar as possible— "all denying seeing any gunfire, and ultimately falsely identifying the shooter as the one person who had no voice – Nathan Garrett."  (*Id*. at ¶ 37.)  When the paramedics arrived, Van Liere, Allen, Leach, Haas and Nye were standing in a group outside of the Cabin.  (*Id*. at ¶ 38.)  Meade was inside the Cabin, cradling Garrett's

---

[5] Plaintiff alleges that, on October 20, 2021, Develin was a "supervisory agent of the ONG" and that the ONG Defendants were aware that Develin had engaged in this dangerous "exercise" before the incident in which Nathan Garrett was killed. (*Id*. at ¶¶ 111, 112, 114, 131.)

dead body. (*Id.* at ¶ 39.) While the paramedics were inside tending to Garrett, Develin walked out of a back bedroom. (*Id.*)

Deputy Mayle arrived at the scene at approximately 11:26 p.m. (*Id.* at ¶ 36.) Upon his arrival, the paramedics informed him that Garrett was deceased. (*Id.* at ¶ 40.) Deputy Mayle was also informed of "the efforts of the survivors to coordinate their 'stories.'" (*Id.*) After entering the Cabin and surveying the scene, Deputy Mayle contacted the Morgan County Sheriff's Office ("MCSO") dispatch and requested a supervisor's presence. (*Id.*) Shortly thereafter, Defendant Morgan County Sergeant Thomas Jenkins arrived, was advised of the situation by Deputy Mayle, and assisted in gathering information from the individuals present. (*Id.*)

According to Plaintiff, "neither Deputy Mayle nor Sgt. Jenkins made any attempt to initially secure the firearms, detain or segregate the individuals, take any blood-alcohol readings or any other trace evidence from the Guardsman Defendants, Nye, or Garrett." (*Id.* at ¶ 41.) Instead, Deputy Mayle "attempted to gather information from the individuals in a group setting while the individuals were clearly in view and earshot of one another." (*Id.* at ¶ 42.) Under Sergeant Jenkins's supervision, Deputy Mayle "simply handed witness statement forms to each of the individuals with the instructions to write down what happened while Mayle left that area and returned to the inside of the Cabin." (*Id.*) Deputy Mayle did attempt to contact Morgan County Sheriff Douglas McGrath to come to the scene so that he could request further assistance from State investigators. (*Id.* at ¶ 43.) Sheriff McGrath, however, refused to do so,[6] which resulted in the inability to request assistance from the Ohio State Highway Patrol and/or Ohio Bureau of Criminal Investigation. (*Id.*)

---

[6] According to Plaintiff, "Sheriff McGrath has a well-known reputation in the local first responder community as becoming intoxicated after hours and thus reluctant to expose himself to incrimination by reporting to nighttime crime

Deputy Mayle and Sergeant Jenkins were told by the soldiers that it had been Leach's Ruger that fired the shot that killed Garrett.  (*Id.* at ¶ 44.)  Leach told Deputy Mayle that, after Garrett was killed, Leach took possession of the weapon and removed it to the adjoining bedroom where he placed it into a carrying case and set the case on the floor under a desk.[7]  (*Id.*)  When the Ruger was presented to the Deputies, it "did not have any blood on it or other residue."  (*Id.*)  According to Plaintiff, "Meade and/or Leach later confirmed that the gun had been cleaned after the shooting."  (*Id.*)

At approximately 12:30 a.m. on October 21, 2021, Develin placed a call to the ONG 174th AAD and advised them that Garrett was deceased due to a gunshot wound to the head.  (*Id.* at ¶ 45.) About an hour later, ONG First Sergeant Gillum arrived at the Cabin with a van.  (*Id.*)  Deputy Mayle "advised them that the stories of the Guardsman Defendants and Nye were inconsistent and that he believed that they were being deceitful."  (*Id.*)  Despite these concerns, Deputy Mayle and Sergeant Jenkins failed to make any effort to segregate the witnesses or interrogate them further.  (*Id.* at ¶ 46.) Nor did Deputy Mayle or Sergeant Jenkins take any of the Guardsmen Defendants into custody or make any arrests.  (*Id.*)  Instead, Deputy Mayle and Sergeant Jenkins "permitted the ONG to remove the Guardsman Defendants from the Property and return them to base where the ONG required each involved soldier to write statements."  (*Id.*)  Nye was permitted to drive home, even though she was underage and had been drinking.  (*Id.*)

---

scenes and engaging the expertise and resources of other law enforcement agencies, even when warranted as in this case." (*Id.*)

[7] This is the same bedroom that paramedics allegedly saw Develin walking out of when they first arrived.  (*Id.* at ¶¶ 39, 44.)

Later during the morning of October 21, 2021, Sergeant Russell of the ONG AAD contacted the MCSO and advised that the Guardsman Defendants could be further questioned regarding Garrett's death "now that they had a night's sleep and sobered-up." (*Id*. at ¶ 47.) The Guardsman Defendants arrived at the MCSO and were re-questioned by Deputy Mayle about the incident of the prior evening. (*Id*. at ¶ 48.) "All Guardsman Defendants arrived in identical clothing, with shirts that read 'ARMY' across the front of them." (*Id*.) During the October 21, 2021, interviews, "most of the Guardsman Defendants' stories had changed dramatically from the night before." (*Id.* at ¶ 49.) "For instance, instead of remaining consistent with his story to the MCSO that evening that he saw nothing, the next day [] Van Liere claimed to Deputy Mayle that he in fact had witnessed the entire progression of the gun being loaded and Nathan Garrett being shot." (*Id*.) It was also the first time any of the Guardsman Defendants admitted to the Russian Roulette game being performed both that night, and before.[8] (*Id*.)

Shortly after the Guardsmen Defendants left the MCSO's Sheriff's Office, Sheriff McGrath took Deputy Mayle off the case and took over the investigation. (*Id*. at ¶ 51.) Plaintiff claims that, thereafter, "the MCSO did not conduct any further productive investigation into Mr. Garrett's death." (*Id*.) In particular, Plaintiff alleges that no gunshot residue testing was completed, no fingerprints were taken, no DNA testing was conducted, no ballistics analysis was conducted, and no forensic analysis of the Cabin was performed. (*Id*.) Further, the MCSO never retrieved the shell casing or

---

[8] Plaintiff alleges that: "What happened at the 174th Armory that evening is unknown at this time. However, what is known is as they left the scene of the incident, a group of off duty National Guard soldiers and one civilian had been drinking, shooting guns, and one ended up dead while no one claimed to have seen what happened. But the next morning, after the soldiers all showed up at the MCSO clean and sober, all of a sudden there was an explanation for what took place. Since it was way too late for any of them to be implicated by physical evidence (i.e. gunshot residue) or other trace evidence, they felt comfortable revealing this Russian Roulette story to provide some plausible and convenient explanation for the MCSO to place the blame at the feet of the one person who could no longer speak for himself." (*Id*. at ¶ 50.)

bullet that killed Garrett. (*Id*. at ¶ 52.) Rather, it was ONG Sergeant John Russell who discovered a shell casing near the area of the shooting while visiting the Cabin on October 21, 2021 to retrieve additional property of the soldiers. (*Id*. at ¶ 53.) He also observed what appeared to be a bullet strike in the wall behind the refrigerator. (*Id*.) Sergeant Russell placed the casing in a bag and took a photo of the bullet-strike before delivering them to the MCSO. (*Id.*) On February 14, 2022, however, "Sheriff McGrath told the Garrett family that despite being provided the day after the shooting [with] a photograph of the location of the subject bullet, that evidence had subsequently 'disappeared.'" (*Id.* at ¶ 54.)

Sheriff McGrath closed his investigation "just days" after the incident at the Cabin. (*Id*. at ¶ 55.) No arrests were made, or criminal charges brought. (*Id*.) Rather, Garrett's cause of death was designated as an accidental self-inflicted gunshot wound – "a conclusion that most of the first responders and ONG officials do not believe based upon the conflicting, inconsistent, and deceitful information" allegedly provided by the Guardsmen Defendants and Nye. (*Id*. at ¶ 55.)

Frustrated, the Garrett family began collecting information and evidence.[9] (*Id*. at ¶ 57.) The Garrett family contacted various law enforcement agencies, including the Federal Bureau of Alcohol, Tobacco and Firearms (""ATF"). (*Id*. at ¶ 60.) The ATF subsequently discovered, in Develin's cell phone, texts between Develin and another Guardsman (who is believed to be Van Liere) where they

---

[9] Plaintiff alleges that the Garrett family's investigation included "a deep examination of Discord, a popular free messaging internet platform." (*Id*. at ¶ 57.) "As a result of the disturbing, sadistic, racially offensive, misogynistic, and antisemitic posts of several of the Guardsmen Defendants on Discord that [the Garrett Family] had discovered and shared with law enforcement, Meade and Develin were arrested and charged with criminal offenses – unrelated to the death of Nathan Garrett." (*Id*. at ¶ 61.) One of Develin's threatening acts was directed towards the MCSO because of their refusal to return his handguns now that the case was closed. (*Id*.) Plaintiff alleges that: "Federal investigators thought enough of this and other threats (fly an airplane into the Columbus Budweiser Brewery Towers in the fashion of 9/11 and shooting up a Columbus Jewish Synagogue) to charge Develin with hate crimes. This member of the Ohio National Guard and fellow radar missile artillery soldier with the Guardsmen Defendants plead guilty and is currently incarcerated in Federal Prison." (*Id*. at ¶ 62.)

discuss "feeling pressure from various law enforcement agencies and covering up for themselves by hiding and destroying evidence." (*Id*. at ¶ 63.) One of the texts is from March 28, 2022, and is between Develin and a person believed to be Van Liere, as follows:

> [Sender believed to be Van Liere] Once I Get back, I think we should all meet. Discuss what we're going to do going forward. I'm sure by the time I'm back at some point next month we will know more.

> [Develin] As long as we're all on the same page. We'll be fine. F**k our leadership. They've told [redacted name] and I that they're on our side in the past but obviously with this new development they don't want to tell us.

(*Id*.)

The ONG performed its own review of Garrett's death as part of a larger inquiry into the military's concern of the influence of seditious local militant groups, the members of which are also state National Guardsmen. (*Id*. at ¶ 58.) The Garrett family was first advised on December 21, 2021, by Sergeant Harris of the 174th AAD that the ONG would only begin investigating once the MCSO's file was closed – even though Sheriff McGrath had closed his inquiry two months earlier. (*Id*.) A month later, on January 14, 2022, Sergeant Harris told the family that a Lieutenant Snyder was assigned by the ONG as the investigating officer for the incident that led to Garrett's death. (*Id*.) Lieutenant Snyder was "uninterested in the information the family had uncovered" and "was never heard from thereafter." (*Id*.)

On April 5, 2022, ONG Lt. Colonel Bob Lytton spoke with Plaintiff Lisa Garrett. (*Id*. at ¶ 59.) Colonel Lytton informed Plaintiff that he had been assigned to investigate Lieutenant Snyder, who had been removed from the inquiry into the Garret's death. (*Id*.) Colonel Lytton also revealed to the family for the first time that there were bodycam images from the MCSO of the October 20, 2021, incident that were a part of Lieutenant Snyder's file. (*Id*.) The Garrett family was shocked

10

because they had previously requested all evidence "back in the fall of 2021" but were never provided with any bodycam footage, nor did the MCSO or the investigating Deputies suggest the existence of bodycam evidence.  (*Id.*)

Plaintiff alleges that, "[a]s a consequence of the conscious wrongdoing of the MCSO, the ONG and the Guardsman Defendants (including Brenna Nye), Plaintiff has been denied the ability to identify the person(s) who is directly responsible for the shooting of Nathan Garrett and has been denied a legal remedy against such tortfeasors directly for the death of her son."  (*Id.* at ¶ 64.)

## II.    Procedural History

### A.    The Pleadings

On October 13, 2023, Plaintiff filed a Complaint in this Court against the following defendants: (1) the MCSO; (2) the Morgan County Board of County Commissioners; (3) Sheriff McGrath; (4) Deputy Mayle; (5) Deputy Jenkins; (6) the ONG c/o Major General Harris; (7) ONG AAD First Sergeant Gillum; (8) ONG AAD Captain Wilker; (9) ONG AAD Commanding Officer Bogan; (10) Guardsmen Defendants Allen, Van Liere, Develin, Meade, Leach, and Haas; (11) Nye; and (12) John Does Nos. 1 through 3.  (Doc. No. 1.)  Therein, Plaintiff alleged various state and federal claims arising out of Garrett's death on October 20, 2021.

In January 2024, Nye and Allen filed Answers and, later, Amended Answers.  (Doc. Nos. 10, 11, 14, 17.)  The MCSO, Morgan County Board of County Commissioners, McGrath, Mayle, and Jenkins (hereinafter "the Morgan County Defendants") filed a Motion to Dismiss.  (Doc. No. 18.)  Allen, Meade, and Van Liere also filed separate Motions to Dismiss and/or for Judgment on the Pleadings.  (Doc. Nos. 12, 13, 16.)  At that time, however, Plaintiff had yet to perfect service on numerous Defendants, including the ONG Defendants, Develin, and Haas.  Thus, on February 21,

11

2024, the Court notified Plaintiff that "unless good cause is shown for failure to serve the above Defendants as provided under the Rules, the above Defendants will be dismissed without prejudice on March 6, 2024." (Doc. No. 25.)

On March 6, 2024, Plaintiff filed a Motion for Leave to Amend Complaint, which was granted the same day. (Doc. No. 44.) In her Amended Complaint, Plaintiff asserts a total of ten state and federal claims against the same Defendants as in the original Complaint, including (among other things) seven claims against the ONG Defendants.[10] (*Id.*) Specifically, Plaintiff asserts the following claims:

    (1)    Denial of Access under 42 U.S.C. § 1983 against the ONG, Sergeant Gillum, Captain Wilker, and Commander Officer Bogan (hereinafter "the ONG Defendants"[11]) (Count One); and the Morgan County Defendants (Count Three);

    (2)    Violation of Ohio Rev. Code § 2921.32 (Obstructing Justice) against the ONG Defendants (Count Two); the Morgan County Defendants (Count Four); and the Guardsmen Defendants and Defendant Nye (Count Six);

    (3)    Civil Conspiracy under 42 U.S.C. § 1983 against the ONG Defendants and the Morgan County Defendants (Count Five);

    (4)    Violation of Ohio Rev. Code § 2923.15 (Using Weapons While Intoxicated) against the ONG Defendants, the Guardsmen Defendants, and Nye (Count Seven);

---

[10] Defendants Gillum, Wilker, and Bogan are sued both in their individual capacities and in their capacities as First Sergeant, Captain, and Commanding Officer, respectively, of the ONG AAD in McConnelsville. (*Id.* at PageID# 329.)

[11] The Court notes that, in the Amended Complaint, Plaintiff identifies "the ONG Defendants" as including the ONG, Major General John Harris, Wilker, and Bogan—but not Defendant Gillum. (Doc. No. 44 at ¶ 10.) The Court also notes that Major General Harris is not individually named as a Defendant in this action. Rather, the caption of the Amended Complaint only names Major General Harris as follows: "Ohio National Guard c/o Major General John C. Harris, Jr." (Doc. No. 44 at PageID# 329.) Regardless, the Court makes clear that, for purposes of this Opinion, this Court will refer to the ONG, Gillum, Wilker, and Bogan as "the ONG Defendants."

> (5)     State Law Civil Conspiracy claim against all Defendants (Count Eight);
>
> (6)     Freedom of Information Act ("FOIA") Violation against the ONG Defendants (Count Nine); and
>
> (7)     Negligent Retention against the ONG Defendants (Count Ten).

(*Id*.)  With respect to her § 1983 and state law claims, Plaintiff seeks compensatory and punitive damages, as well as reasonable attorney's fees and costs.  (*Id*. at PageID#s 350-361.)  Regarding her FOIA claim,  Plaintiff seeks the immediate production of certain documents, as well as a statutory penalty of $100 per day from June 10, 2022 to the present.  (*Id*. at PageID#s 359, 361.)

Because the nature and factual bases of the claims against the ONG Defendants are important to the resolution of the Motions currently pending before the Court, the Court will discuss these claims in some detail.  In Count One, Plaintiff alleges a claim against the ONG Defendants under 42 U.S.C. § 1983 for denial of access.  (*Id.* at ¶¶ 65-77.)  Plaintiff claims that "[a]bsent Defendants' intentional concealment of the true evidence of the underlying crimes, Plaintiff would have a valid wrongful death claim for the death of Mr. Garrett against a primarily liable tortfeasor pursuant to Ohio Revised Code Section 2515.01 *et seq*."  (*Id*. at ¶ 66.)  Plaintiff goes on to allege that, "[a]s employees and officers of the State of Ohio, the ONG Defendants, in order to cover for the Guardsman Defendants, with the active assistance of the MCSO, McGrath, Jenkins and Mayle, intentionally obstructed the investigation into the death of Mr. Garrett by, inter alia, removing the Guardsman Defendants from the scene of the crime and later disposing of evidence (cleaning of the scene in the following days, failing to take any trace evidence samples from the Guardsman Defendants and letting them clean, sober-up and then report sanitized to the MCSO the following day)."  (*Id*. at ¶ 67.)  Plaintiff claims that "[t]he misfeasance continued in the following months when

13

despite overwhelming evidence that one or more soldiers were directly involved in criminal conduct, the ONG failed to take any timely steps to interrogate witnesses, collect and preserve evidence, and conduct any necessary scientific testing such as gunshot residue, fingerprints, ballistics, blood splatter patterns before the evidence either became too old, unreliable, or just completely disappeared." (*Id.* at ¶ 68.)

Plaintiff alleges that "by reinstating most if not all of the Guardsmen Defendants who were not criminally charged by law enforcement agencies other than the MCSO, the ONG Defendants have ratified the criminal misconduct of those individuals." (*Id.* at ¶ 71.) Plaintiff asserts that "[d]ue to the intentionally obstructive actions taken by the ONG Defendants under color of state law, the underlying wrongful death claim has been substantially prejudiced in a manner that cannot be remedied by a state court." (*Id.* at ¶ 73.) Plaintiff alleges that this "serves to deny Plaintiff access to a state remedy in violation [of] their Due Process rights under the Fourteenth Amendment of the U.S. Constitution, the Equal Protection Clause under the same provision, the First Amendment, and the Privileges and Immunities Clause of Article IV." (*Id.*)

In Count Two, Plaintiff asserts a state law claim against the ONG Defendants for obstruction of justice in violation of Ohio Rev. Code § 2921.32. (*Id.* at ¶¶ 78-84.) In this Count, Plaintiff alleges that the ONG Defendants, with the purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another, did (1) destroy or conceal physical evidence of a crime or act and induce any person to withhold testimony or information; (2) communicate false information to the MCSO and ONG Defendants; and (3) prevent or obstruct any person, by means of force, intimidation, or deception, from performing any act to aid in the discovery, apprehension, or prosecution of any person. (*Id.* at ¶¶ 79, 80, 81.) Plaintiff alleges that the ONG Defendants' actions

14

violate Ohio Rev. Code § 2921.32 and were taken with malicious purpose, in bad faith, and in a wanton and reckless manner. (*Id.* at ¶¶ 82, 83.) Plaintiff asserts that she is entitled to damages pursuant to Ohio Rev. Code § 2307.60. (*Id.* at ¶ 84.)

In Count Five, Plaintiff asserts a claim against the ONG Defendants and the Morgan County Defendants pursuant to § 1983 for civil conspiracy. (*Id.* at ¶¶ 100-104.) Plaintiff alleges that the ONG Defendants and MCSO Defendants engaged "in a single plan with the conspiratorial objective to intentionally deprive Plaintiff access to the courts by intentionally and maliciously destroying evidence and obstructing the investigation into the death of Mr. Garrett." (*Id.* at ¶ 101.) Plaintiff further claims that "[t]he ONG Defendants and MCSO Defendants did commit overt acts in furtherance of their conspiracy by way of removing the Guardsman Defendants from the scene of the crime, allowing the Guardsman Defendants to be removed from the scene of the crime, destroying evidence by intentionally disposing of the bullet and shell casing, and intentionally failing to conduct an investigation into the death of Mr. Garrett." (*Id.* at ¶ 102.)

In Count Seven, Plaintiff asserts a claim against the ONG Defendants, the Guardsmen Defendants, and Nye for using weapons while intoxicated in violation of Ohio Rev. Code § 2923.15. (*Id.* at ¶¶ 110-115.) Plaintiff alleges that, at the time of Garrett's death, "the Guardsmen Defendants and Nye in their individual capacities, and Defendant Develin as agent of the ONG" were intoxicated and/or consumed sufficient alcohol to be impaired, and were handling firearms. (*Id.* at ¶¶ 111, 112.) Plaintiff further alleges as follows:

> The injurious wrongdoing of the Guardsmen Defendants in their individual capacities and Defendant Develin also as a supervisory agent for the ONG, creates vicarious liability for the ONG Defendants. Further, the ONG Defendants are also liable from a primary liability standpoint for knowing of the misconduct through the instances before Nathan Garrett was killed, actively participating in it through Sergeant Develin,

15

and in ratifying the misconduct by retaining the Guardsman Defendants after learning
of the drunken usage of the handgun "exercise."

(*Id*. at ¶ 114.)

In Count Eight, Plaintiff asserts a state law claim for civil conspiracy against all Defendants,

including the ONG Defendants. (*Id*. at ¶¶ 117-120.) Plaintiff alleges that "[b]y destroying evidence,

intentionally obstructing the investigation into the death of Mr. Garrett, and ratifying the misconduct

of its agents/employees by the ONG Defendants, all Defendants maliciously conspired, expressly or

tacitly, in pursuance of a common plan or design to injure Plaintiff by way of Obstructing Justice in

violation of R.C. 2921.32." (*Id*. at ¶ 118.) Plaintiff claims that "[t]he conspiracy undertaken by the

Defendants did cause injury to Plaintiff by way of depriving her of a primarily liable wrongful death

tortfeasor for the death of Nathan Garrett." (*Id*. at ¶ 119.)

In Count Nine, Plaintiff asserts a claim against the ONG Defendants for violation of the FOIA.

(*Id*. at ¶¶ 121-129.) Plaintiff alleges that the ONG "has performed at least one review that included

some reference to the shooting death of Nathan Garrett." (*Id*. at ¶ 122.) The first and more

comprehensive of these reviews was allegedly done "by Captain Matthew Jacobs, USA, which was

initiated to look into potential infectious influence of radical seditious militia within the Ohio National

Guard. Captain Jacob's review included the shooting death of Nathan Garrett." (*Id*.) Plaintiff claims

that the second official review is what is called a "Loss on Duty" or ("LOD") determination. (*Id*. at

¶ 123.) Pursuant to the FOIA, Plaintiff officially submitted requests for production of this information

on May 10, 2022, February 19, 2023, and June 6, 2023, but the information was not produced. (*Id*.

at ¶¶ 124-126.) Plaintiff demands that the Court "order the immediate production of the unredacted

Jacobs report – at the least (or at least those portions that deal with the shooting death of Nathan

Garrett) – as well as the statements completed by the Guardsmen Defendants (and any of the ONG

16

Defendants) on or around October 20-21, 2021." (*Id*. at ¶ 129.)  Plaintiff also requests that the Court

impose a penalty upon the ONG pursuant to 5 U.S.C. § 552 *et seq*. of at $100 per day from June 10,

2022 through to the present and for every day into the future that the request remain outstanding and

ignored.  (*Id*.)

Finally, in Count Ten, Plaintiff asserts a claim against the ONG Defendants for Negligent

Retention.  (*Id*. at ¶¶ 130-134.)  Plaintiff alleges that "ONG and the ONG Defendants are

independently liable for the negligent retention, supervision and promotion of Develin because the

ONG Defendants chose to employ and retain Develin who had a history of criminal, tortious or

otherwise dangerous conduct about which the ONG Defendants knew and/or could have discovered

through reasonable investigation."[12]   (*Id*. at ¶ 131.)  Plaintiff further alleges that "[a] special

relationship also existed between the ONG Defendants and Nathan Garrett, who was an off-duty

employee of the ONG at the time of his death." (*Id*. at ¶ 132.)  Plaintiff claims that "[s]ince the ONG

Defendants knew of the dangerous firearm exercise performed by Develin, Meade and Leach, when

drinking alcohol during off-duty socializing away from the [AAD], Defendants owed a duty to off

duty employees like Garrett to prevent foreseeable injury by exercising reasonable care to refrain

from continuing to employ incompetent employees like Develin." (*Id*.)

**B.    Motions to Dismiss**

In light of the filing of the Amended Complaint, the Court denied all pending Motions to

Dismiss as moot.  Thereafter, Allen, Nye, Meade, and Haas filed Answers and the Morgan County

---

[12] Plaintiff alleges that "the evidence in support of this claim involves, inter alia¸ the ONG Defendants' knowledge of Develin's mental health condition(s), the treatment therefor, and the previous misconduct he, Meade and Leach carried out at the Cabin with the intoxicated handgun exercise where a firearm actually discharged into the floor on a prior occasion." (*Id*.)

Defendants, Van Liere, Allen, and Haas each filed Motions to Dismiss and/or for Judgment on the Pleadings.  In addition, on March 19, 2024, Nye filed a Motion to Consolidate the instant case with *Garrett v. Allen*, *et al.,* Case No. 1:24cv00471 (N.D. Ohio), which had been removed to this Court by the United States from the Cuyahoga County Court of Common Pleas.[13]  (Doc. No. 53.)  This Court denied the Motion to Consolidate on July 11, 2024.  (Doc. No. 98.)

The Court issued a Memorandum Opinion & Order on the Motions to Dismiss on August 9, 2024.  (Doc. No. 100.)  Of particular note, the Court determined that McGrath, Mayle and Jenkins were entitled to qualified immunity with respect to Plaintiff's individual capacity claims under § 1983 for denial of access to the courts (Count Three) and civil conspiracy (Count Five).  (*Id*. at PageID#s 913-936.)  Regarding Plaintiff's "backward-looking"[14] denial of access claim, the Court found that

---

[13] In *Garrett v. Allen, et al*., Case No. 24cv471, the docket reflects that Plaintiff filed a Complaint in the Cuyahoga County Court of Common Pleas on October 13, 2023 against Allen, Van Liere, Develin, Meade, Leach, Haas, Nye, and Meade's grandmother, Betty Jean Greene.  This Complaint also arises out of the shooting death of Nathan Garrett, and alleges state law claims for premises liability, civil conspiracy, negligent handling/use/furnishing of a handgun; and violations of Ohio Rev. Code § 2923.15 (using weapons while intoxicated) and § 2921.32 (obstructing justice).  While the case was pending in state court, Plaintiff subpoenaed the ONG for documents and information relating to Garrett's death, including the Jacobs Report.  Through counsel, the Department of the Army ("DOA") responded, via letter, that "Department of Defense and Army regulations govern the disclosure of official Ohio National Guard information."  The DOA indicated that Plaintiff's subpoena "does not comply with the relevant regulations" and, therefore, "the Ohio National Guard cannot evaluate your request or honor your subpoena at this time."  Plaintiff filed a Motion to Compel, which the state court granted on March 11, 2024.  The United States then removed the action to the Northern District of Ohio, where it was assigned to District Judge David Ruiz. On June 12, 2024, Judge Ruiz issued an Order (1) finding that removal was proper "only as to the Plaintiff's discovery requests to ONG and the state issued subpoena," and (2) severing and remanding the remainder of the case back to state court.  *See* Case No. 1:24cv471 (Doc. No. 24 at p. 4.)  The docket in Case No. 1:24cv471 reflects that, after extensive negotiations, the ONG agreed to turn over a redacted version of the Jacobs Report.  (*Id*. at Doc. No. 26.) After further negotiations and the entry of a Stipulated Protective Order, the ONG authorized the release of unredacted copies of the Jacobs Report and certain exhibits thereto, as well as unredacted copies of additional documents including the Report of Lt. Snyder.  (*Id*. at Doc. Nos. 31, 40, 41.)  The docket reflects that the parties filed a Stipulation of Dismissal in Case No. 1:24cv471 on January 27, 2025, which was entered by Judge Ruiz the following day.  (*Id*. at Doc. Nos. 42, 43.)

[14] Denial of access to the court claims may be "forward-looking" or "backward-looking." *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013).  In forward-looking claims, the plaintiff accuses the government of creating or maintaining some "frustrating condition," that stands between the plaintiff and "the courthouse door." *Christopher*, 536 U.S. at 413. "The object of the suit is to eliminate the condition, thereby allowing the plaintiff, usually an inmate, … to sue on some underlying legal claim." *Flagg*, 715 F.3d at 173 (internal citation omitted).  In backward-looking claims, "the government is accused of barring the courthouse door by concealing

"Plaintiff has failed to plausibly allege denial of access claims against Defendants McGrath, Jenkins, and Mayle because she has failed to sufficiently allege 'substantial prejudice to her underlying claim that cannot be remedied by the state court" or "a request for relief which is now otherwise unattainable.'" (*Id*. at PageID# 928) (quoting *Jackson*, 64 F.4th at 746).  Specifically, the Court found that Plaintiff does not sufficiently allege that she is unable to file a "John Doe" wrongful death action in Ohio state court, and use the discovery process in that suit to learn the identity of the individual who fired the shot that killed Nathan Garrett.  (*Id*.)  The Court further found that Plaintiff had failed to set forth sufficient allegations that "connect the dots between Defendants' alleged conduct and impossibility or futility of pursuing a John Doe wrongful death claim."  (*Id*. at PageID# 934.)  The Court then dismissed Plaintiff's § 1983 civil conspiracy claim because it was derivative of her denial of access claim.  (*Id*. at PageID#s 935-936.)  Lastly, the Court dismissed Plaintiff's § 1983 official capacity claims against the Morgan County Board of Commissioners, McGrath, Jenkins and Mayle. [15]  (*Id*. at PageID#s 936-938.)

---

or destroying evidence so that the plaintiff is unable to ever obtain an adequate remedy on the underlying claim."  *Flagg*, 715 F.3d at 173.  The Sixth Circuit held that a backward-looking denial of access claim has the following four elements: "(1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) 'substantial[] prejudice' to the underlying claim that cannot be remedied by the state court; and (4) a request for relief which ... is now otherwise unattainable.'" *Jackson v. City of Cleveland*, 64 F.4th 736, 746 (6th Cir. 2023) (quoting *Flagg*, 715 F.3d at 174).

[15] The Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims against Van Liere, Allen, Haas, Develin, Meade, Leach, and Nye, on the grounds that the same claims were pending against these Defendants in the State Court Action.  (*Id*. at PageID#s 941-946.)  In addition, the Court denied the Morgan County Defendants' Motion without prejudice with respect to Plaintiff's state law Obstruction of Justice and Civil Conspiracy claims.  (*Id*. at PageID# 949.)  Instead, the Court stayed the instant action with respect to Plaintiff's state law claims against the Morgan County Defendants until such time as the state court issued a ruling on the statute of limitations issues raised in the motions to dismiss filed by Van Liere, Allen, Haas, Develin, and Meade in the State Court Action.  On January 27, 2025, the state trial court denied the motions to dismiss filed in the State Action by these Defendants.  (Doc. No. 119 at PageID# 1108-1109.)  The state trial court declined to address the merits of Defendants' statute of limitations arguments, finding that "Ohio law does not generally permit under the facts or the law adjudication of statute of limitations claims under Rule 12(B)(6) given their fact-heavy nature."  (*Id*.)  Plaintiff filed a "Notice" herein advising this Court of the state court's ruling and subsequently filed a Motion to Schedule Status Conference and Lift Stay.  (Doc. Nos. 119, 127.)  This Court denied Plaintiff's request for a status conference, but lifted the stay as to the state law claims against the Morgan County Defendants and ordered supplemental briefing regarding certain issues not relevant herein.  (Doc. No. 131.)

C.     **The ONG Defendants' Notice of Deficient Service**

Meanwhile, on March 11, 2024, Plaintiff filed returns of service executed by express mail as to the ONG Defendants.[16]  (Doc. Nos. 39, 41, 42, 48.)  Shortly thereafter, the ONG Defendants filed a "Notice of Deficient Service."  (Doc. No. 66.)  The ONG Defendants argued that "for the purposes of the allegations in the Complaint and Amended Complaint, these defendants are federal actors, and the Plaintiff is required to perfect service upon the United States of America under Fed. R. Civ. P. 4(i)."  (*Id.* at PageID# 547.)  On March 27, 2024, Plaintiff filed a Response in which she argued that "so far as the ONG Defendants are concerned, this case primarily concerns the violation of Plaintiffs' constitutional rights by individuals acting while employees of a department of the State of Ohio under *color of state law*." (Doc. No. 69 at PageID# 554) (emphasis in original).  Plaintiff asserted that, as the ONG Defendants had not been called to active duty, they are state actors and had been properly served under Ohio law.  (*Id.*)

On July 10, 2024, the Court issued a Memorandum Opinion & Order in which it evaluated "whether, for purposes of the allegations and claims in Plaintiff's Amended Complaint, the ONG are federal actors and, therefore, required to be served in accordance with Fed. R. Civ. P. 4(i)."  (Doc. No. 97.)  After a lengthy analysis, the Court found, "based on the limited record before it and for purposes of [that] Opinion only, that the ONG Defendants are federal actors with respect to at least some of Plaintiff's claims and, therefore, must be served in accordance with" Rule 4(i).  (*Id.*)  Nonetheless, the Court noted the specific (and limited) context in which the issue was being

---

[16] The returns of service reflect that Summonses and copies of the Amended Complaint were sent to each of the ONG Defendants via express mail to the following address: "c/o Ohio National Guard, 2825 West Dublin Granville Road, Columbus, Ohio 43235."  (Doc. Nos. 39, 41, 42, 48.)  Delivery was signed for by an individual named "William Sayles." (*Id.*)

20

addressed, i.e., service.  (*Id*. at PageID# 881.)  In order to ensure that it had jurisdiction over the ONG

Defendants, and based on the limited record before it, the Court made a preliminary finding that

Wilker, Gillum, and Bogan were acting in their federal capacities "with respect to at least some of

Plaintiff's claims by virtue of the fact that they were engaged in inactive federal training under 32

U.S.C. § 502(a)."  (*Id*. at PageID# 882.)  Thus, the Court required Plaintiff to serve Wilker, Gillum,

and Bogan[17] under Rule 4(i).  (*Id*. at PageID# 883.)  Lastly, the Court determined (and, indeed,

Plaintiff did not contest) that the ONG is a federal agency for purposes of Plaintiff's FOIA claim

under 5 U.S.C. § 552.  (*Id*. at PageID#s 887-888.)  Thus, the Court found Plaintiff is required to serve

the ONG in accordance with Fed. R. Civ. P. 4(i).  (*Id*.)

### D.    Notice of Substitution and the ONG Defendants' Motions to Dismiss

The docket reflects that Plaintiff proceeded to serve the ONG Defendants pursuant to Rule

4(i).  (Doc. No. 113.)  On October 24, 2024, the United States filed a "Notice of Substitution" in

which it provided notice that "by operation of law, the United States of America is substituted for

Defendants [Gillum, Wilker, and Bogan] in their official capacities."  (Doc. No. 111.)  The United

States asserted that "[d]uring the time in which the acts and omissions alleged in the Amended

Complaint occurred, [Gillum, Wilker, and Bogan] were in federal status and acting within the course

and scope of their employment with the OHNG."  (*Id*.)  The United States attached the sworn

Declarations of Gillum, Wilker, and Bogan in support of this assertion.  (Doc. Nos. 111-1, 111-2,

---

[17] Bogan also asserted that he should be considered a federal actor due to his status as a "dual status technician" under 32 U.S.C. § 709.  Based on the record before it, the Court preliminarily found that, "whether Defendant Bogan is considered in his supervisory role as battalion commander during the federal training period occurring between October 19 and 24, 2021 or in his role as dual status technician under 32 U.S.C. § 709, the ONG Defendants have come forward with sufficient evidence, at this time, to show that Defendant Bogan was acting in a federal capacity for purposes of at least some of Plaintiff's claims."  (*Id*. at PageID# 885.) Accordingly, the Court found that Plaintiff was required to serve Bogan under Rule 4(i) for "this additional reason as well."  (*Id*. at PageID# 886.)

111-3.)  Therein, Gillum and Wilker aver that "from October 19 to October 24, 2021, [they were] ... performing federal training overseeing the unit's training activities in preparation for its upcoming deployment."  (Doc No. 111-1 at ¶ 2; Doc. No. 111-2 at ¶ 2.)  Bogan avers that, in October 2021, he was a battalion commander and next level commander over Wilker and Gillum; "also employed full-time as a Dual Status Federal Technician with the Ohio National Guard; and, further, that "[a]t all times during the period in question, [he] was in the employ of the United States."  (Doc. No. 111-3 at ¶¶ 2, 3, 4.)  In addition, Gillum, Wilker, and Bogan each aver that they "did not participate in the Morgan County Sheriff's investigation of the incident described in the Complaint."  (Doc. No. 111-1 at ¶ 4; Doc. No. 111-2 at ¶ 4; Doc. No. 111-3 at ¶ 5.)  Lastly, Wilker avers that "[n]o one from the Morgan County Sheriff's Department, nor anyone in the military investigation, ever talked to or interviewed me regarding this matter."  (Doc. No. 111-2 at ¶ 5.)

Based on the above, the United States asserted that Gillum, Wilker, and Bogan were "in federal status at the time of the alleged incidents forming the basis of Plaintiff's claims" and, therefore, "this case shall be deemed an action against the United States and the United States shall be substituted as the party defendant."  (Doc. No. 111 at PageID# 999.)  The United States also indicated that, on October 16, 2024, then-United States Attorney for the N.D. of Ohio, Rebecca Lutzko, certified pursuant to 28 C.F.R. § 15.4(a) that Gillum, Wilker, and Bogan "were acting within the course and scope of their employment and duties with the OHNG and federal status at the time of the incidents alleged in the Amended Complaint and are deemed to be employees of the United States of America for purposes of 28 U.S.C. § 2679 during the entire time of the incidents alleged in the Amended Complaint."  (*Id*. at PageID# 1000.)  The following day, the United States filed then-U.S. Attorney Lutzko's Certification on the docket as a separate filing.  (Doc. No. 112.)  Lastly, the United

States asserted that "[b]ased on the United States Attorney's scope of employment certification, the claims against [Defendants Gillum, Wilker, and Bogan] are to be 'deemed a tort action brought against the United States' under the [Federal Torts Claims Act ('FTCA')], 28 U.S.C. § 2679(d)(1), and accordingly, the FTCA is Plaintiff's exclusive remedy." (Doc. No. 111 at PageID# 1000.)

Several weeks later, on November 22, 2024, Gillum, Wilker, and Bogan filed a Motion to Dismiss all of Plaintiff's state and federal claims against them pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. No. 115.) On that same date, the ONG filed a separate Motion to Dismiss Plaintiff's state and federal claims, also pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. No. 116.) After receiving several extensions of time, on February 6, 2025, Plaintiff filed a (1) Motion to Strike the United States "Notice of Substitution," and (2) a combined Brief in Opposition to the ONG Defendants' Motions to Dismiss. (Doc. Nos. 121, 122.) On March 6, 2025, Gillum, Wilker, and Bogan filed a (1) Brief in Opposition to Plaintiff's Motion to Strike, and (2) a Reply Brief in Support of their Motion to Dismiss. (Doc. Nos. 124, 125.) On that same date, the ONG filed a Reply Brief in support of its Motion to Dismiss. (Doc. No. 126.)

Several months later, on July 7, 2025, Plaintiff filed, under seal, a Motion to Supplement her Brief in Opposition to "the ONG Defendants' Motion to Dismiss." (Doc. No. 130.) Therein, Plaintiff asks the Court to supplement her Brief in Opposition with certain documents that she apparently obtained as a result of her negotiations with the ONG in connection with her motion to compel that was granted in the State Court Action, removed to this Court in Case No. 1:24cv471, and resolved by Judge Ruiz in January 2025. (*Id*.) The ONG Defendants did not file a response to Plaintiff's Motion.

## III. Standards of Review

### A. Fed. R. Civ. P. 12(b)(1)

The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[] the allegations in the complaint as true." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co*., 491 F.3d 320, 330 (6th Cir. 2007).  To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387  (6th Cir. 2016); *Ogle v. Ohio Civil Service Employees Ass'n, AFSCME, Local 11*, 397 F.Supp.3d 1076, 1081-82 (S.D. Ohio 2019). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009) (citation omitted).

By contrast, a factual attack raises a factual controversy requiring the district court "to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prods., Inc*., 491 F.3d at 330.  The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus*., 798 F.2d 913, 915 (6th Cir. 1986). The court may allow "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

Here, the ONG Defendants do not clearly state whether they are raising facial or factual attacks.  However, given the fact that the ONG Defendants attach various Declarations and other documentary evidence to their respective Motions, and rely on those documents in connection with their arguments that this Court lacks subject matter jurisdiction over Plaintiff's claims against them,

24

the Court construes the Rule 12(b)(1) challenges raised by the ONG Defendants as asserting factual attacks. Thus, the Court will consider, as appropriate and necessary, the Declarations and documentary evidence submitted by the parties in connection with their Rule 12(b)(1) arguments.[18]

### B.    Fed. R. Civ. P. 12(b)(6)

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)).  For purposes of both Rule 12(b)(6) and Rule 12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly,* 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is

---

[18] The Court makes clear, however, that it will not consider any of the Declarations and documentary evidence submitted by the parties in connection with their arguments for and against dismissal under Rule 12(b)(6).

a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## IV.    Analysis

### A.     Motion to Supplement (Doc. No. 130)

Prior to reaching the parties' substantive arguments raised in the ONG Defendants' Motions to Dismiss and related briefing, the Court will first address Plaintiff's Motion to Supplement.  (Doc. No. 130.)  Therein, Plaintiff notes that, in their Motion to Dismiss, Defendants Wilker, Gillum, and Bogan argue that Plaintiff's claims should be dismissed under Rule 12(b)(6) because the Amended Complaint fails to include sufficient factual allegations specifically relating to them.  (*Id*.)  Plaintiff notes that, in their April 2024 Declarations supporting the United States' Notice of Substitution: (1) Wilker avers that no one from the MCSO, nor "anyone in the military investigation," ever talked to her or interviewed her regarding the October 20, 2021 incident; and (2) Gillum avers that he did not participate in the MSCO's investigation of that incident.  (*Id*.)

26

Plaintiff asserts, however, that a report authored by Lt. Dustin H. Snyder of the ONG in March 2022 ("the Snyder Report") includes written statements that were filled out by the Guardsmen Defendants on the night of Nathan Garrett's death which are notarized by Wilker. (*Id.*) Plaintiff argues that this contradicts Wilker's April 2024 Declaration that "no one in the military had spoken to her" about the incident resulting in Garrett's death. (*Id.*) Plaintiff also asserts that Wilker filled out her own statement "outlining her role in the ONG's investigation into the incident." (*Id.*) Lastly, Plaintiff argues that, contrary to his April 2024 Declaration, Gillum filled out a statement "relating to his interactions with the Morgan County Sheriff's Office on the night of the incident." (*Id.*)

In support of her Motion, Plaintiff attaches copies of (1) the Guardsmen Defendants' handwritten statements dated October 21, 2021, which are witnessed by Gillum and notarized by Wilker (Doc. No. 130-1 at PageID#s 1220-1236); (2) Wilker's handwritten statement dated October 21, 2021, which is notarized by Bogan (Doc. No. 130-1 at PageID# 1237-1239); (3) an unsigned, handwritten "daily log" dated October 21- October 22, 2021 (Doc. No. 130-1 at PageID# 1240); and (4) Gillum's statement dated October 21, 2021, which is notarized by Wilker (Doc. No. 130-1 at PageID#s 1241-1243.) Plaintiff requests that the Court allow her to supplement her Brief in Opposition to Defendants' Motion to Dismiss "with the aforementioned facts and statement forms notarized by Defendant Wilker." (*Id.*) The ONG Defendants did not respond to Plaintiff's Motion.

For the following reasons, Plaintiff's Motion to Supplement is denied. As an initial matter, Plaintiff's Motion is untimely. The ONG Defendants' Motions to Dismiss were ripe on March 6, 2025. Plaintiff did not file her Motion to Supplement until four months later, on July 7, 2025. Plaintiff provides no justification or explanation for this delay. Notably, Plaintiff does not identify when she came into possession of the documents attached to her Motion (hereinafter referred to

collectively as "the Supplementary Documents") or explain why she failed to submit them contemporaneously with her Brief in Opposition. It appears, however, that the Supplementary Documents were disclosed to Plaintiff by the ONG in the context of the parties' negotiations in Judge Ruiz's case, i.e., Case No. 1:24cv00471.[19] (Doc. No. 128.)  At the very latest, then, it appears that Plaintiff was in possession of the Supplementary Documents by January 27, 2025, when Case No. 1:24cv00471 was closed.  Thus, Plaintiff had the Supplementary Documents in her possession before she filed her combined Brief in Opposition to the ONG Defendants' Motions to Dismiss in the instant case on February 6, 2025.  Plaintiff offers no explanation why she failed to attach or discuss the Supplementary Documents to her Brief in Opposition when it was filed.  Nor does she explain why she then waited another four (4) months after the Motions to Dismiss were ripe to seek to supplement her combined Briefs in Opposition with the Supplementary Documents.

Second, although not entirely clear, it appears that Plaintiff seeks to supplement her Brief in Opposition with the Supplementary Documents in order to counter Wilker, Gillum, and Bogan's arguments that dismissal is warranted under Rule 12(b)(6) because the Amended Complaint fails to set forth sufficient factual allegations regarding these Defendants' alleged involvement in the investigation regarding Nathan Garrett's death.  However, at no point in her Motion does Plaintiff acknowledge or address the fact that this Court may generally not rely on such evidentiary materials in resolving a motion to dismiss under Rule 12(b)(6).  *See Bassett*, 528 F.3d at 430 (finding that, in

---

[19] On July 3, 2025, Plaintiff filed a Motion for Leave to file her Motion to Supplement under Seal.  (Doc. No. 128.) Therein, Plaintiff states that: "On December 9, 2024, the Honorable Judge David A. Ruiz issued a Protective Order relating to certain documents that had been disclosed to Plaintiff by the Ohio National Guard in the companion case *Garret v. Allen et al.*, Case No. 1:24-cv-00471, E.C.F. 41. ** * Plaintiff now wishes to file a Motion to Supplement her Brief in Opposition which will reference, and include excerpts from, **the documents subject to the Protective Order**." (*Id.*) (emphasis added).

28

ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.")  Here, the Supplementary Documents are not attached to either the Complaint or Defendants' Motions to Dismiss, nor are they public records.  In sum, Plaintiff makes no reasoned legal argument as to why it would be appropriate for the Court to consider these materials in resolving the parties' arguments under Rule 12(b)(6).  Nor does Plaintiff articulate how or why the Supplementary Documents would be relevant to the parties' arguments under Rule 12(b)(1).

Accordingly, and for all the reasons set forth above, Plaintiff's Motion to Supplement (Doc. No. 130) is denied.

## B. Defendant ONG's Motion to Dismiss (Doc. No. 116)

As noted above, in her Amended Complaint, Plaintiff asserts the following state and federal claims against the ONG:  (1) § 1983 claims for denial of access and civil conspiracy (Counts One and Five); (2) state law claims for violations of Ohio Rev. Code § 2921.32 (Obstruction of Justice), Ohio Rev. Code § 2923.15 (Using Weapons While Intoxicated), Civil Conspiracy, and Negligent Retention (Counts Two, Seven, Eight, and Ten); and (3) FOIA violation (Count Nine).  (Doc. No. 44.)  The ONG moves to dismiss each of these claims for multiple reasons.

First, the ONG argues that, for purposes of the instant action, it "is a federal actor and the only proper defendant regarding Plaintiff's claims against the ONG is the United States."  (Doc. No. 116-1 at PageID# 1065.)  As such, the ONG maintains that Plaintiff fails to state a claim against it under § 1983 because that statute only applies to persons acting under color of state (as opposed to federal) law.  (*Id*. at PageID#s 1073-1074.) The ONG next argues, pursuant to Rule 12(b)(1), that sovereign

immunity bars all of Plaintiff's state tort claims because Plaintiff has failed to identify any waiver of sovereign immunity.  (*Id*. at PageID# 1066-1067.)  The ONG maintains that "Plaintiff's only tort remedy against the ONG is against the United States under the FTCA" and asserts that dismissal is warranted because Plaintiff has not plead any claims under that statute.  (*Id.*)  Even assuming Plaintiff had pled an FTCA claim, the ONG argues that dismissal is nonetheless warranted because (1) Plaintiff failed to exhaust her administrative remedies; (2) the discretionary function and intentional tort exceptions to the FTCA's waiver of sovereign immunity bar Plaintiff's negligent retention, obstruction of justice, and civil conspiracy claims; and (3) the United States has not waived sovereign immunity to be held directly liable for a violation of Ohio Rev. Code § 2923.15 (using weapons while intoxicated) and, further, cannot be held liable under this statute on a theory of vicarious liability because Develin was acting outside the scope of his employment at all relevant times.  (*Id*. at Page ID#s 1067-1073.)

Second, the ONG argues that, even assuming it were a state actor for purposes of the allegations in the Amended Complaint, all of Plaintiff's claims should be dismissed for lack of subject matter jurisdiction.  Regarding Plaintiff's § 1983 claims, the ONG maintains that these claims fail because a state agency is not considered a "person" for purposes of § 1983 and, thus, cannot be sued under § 1983 as a matter of law.  (*Id*. at PageID# 1074.)  Even assuming that it could be considered a "person," the ONG argues that Plaintiff's § 1983 claims against it (including Plaintiff's official capacity claims against Wilker, Gillum, and Bogan) are barred by sovereign immunity under the Eleventh Amendment.  (*Id.* at PageID#s 1074-1075.)  Regarding Plaintiff's pendent state law claims, the ONG likewise argues that these claims are barred by the Eleventh Amendment because the State of Ohio has not consented to be sued in federal court.  (*Id*. at PageID#s 1075-1077.)  Lastly, the ONG

argues that Plaintiff's FOIA claim is moot because Plaintiff "has received all that she is entitled to receive" under that statute, including copies of the Jacobs Report. (*Id.* at PageID# 1078.)

In response, Plaintiff insists that the ONG is a state actor for purposes of the instant action because Wilker, Gillum, and Bogan were not "engaged in training or duty" pursuant to 32 U.S.C. § 502(a) as it relates to Plaintiff's claims. (Doc. No. 122 at PageID#s 1137-1140.) Plaintiff also argues, at some length, that the ONG must be considered a state actor for purposes of the instant action because the majority of her claims encompass time periods both before and after the "training period" that occurred between October 19, 2021 and October 24, 2021.[20] (*Id.*) Relying on *Scheuer v. Rhodes*, 416 U.S. 232 (1974), Plaintiff asserts that it would be premature to dismiss her § 1983 official capacity claims on the basis of sovereign immunity under the Eleventh Amendment and that the Court should instead "allow the factual record to develop." (*Id.* at PageID# 1140-1141.) Plaintiff further maintains that dismissal on the basis of sovereign immunity (as to both her § 1983 and state law claims) is not warranted because the ONG Defendants waived their Eleventh Amendment immunity defense by participating in the instant action. (*Id.* at PageID#s 1141-1143.) Lastly, Plaintiff argues that her FOIA claim is not moot because the ONG "forced [her] to litigate the release of the Jacobs Report in three (3) separate cases across (2) courts, causing great delay ... as well as unnecessary litigation fees and expenses." (*Id.* at PageID# 1148.) Plaintiff argues that due to ONG's "obstructionist behavior," the Court should award her reasonable attorney's fees and litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E). (*Id.*)

---

[20] Even assuming that the ONG is considered a federal actor, Plaintiff maintains that she properly exhausted her administrative remedies under the FTCA and that her negligent retention claim is not barred by the discretionary function exception. (*Id.* at PageID#s 1143-1147.)

The Court finds as follows. While the parties devote considerable time and attention in their briefing to the issue of whether the ONG is a state or federal actor for purposes of the instant action, the Court finds that it need not resolve this issue. Even assuming *arguendo* that the ONG is a state actor for purposes of Plaintiff's § 1983 and state law claims (as Plaintiff strenuously insists), the Court finds that the ONG is entitled to judgment in its favor pursuant to Rule 12(b)(1) on the basis of sovereign immunity under the Eleventh Amendment.

### 1. § 1983 Denial of Access and Civil Conspiracy Claims (Counts One and Five)

The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This Amendment "forbids a plaintiff from suing a state, a state agent, or a state instrumentality for monetary damages in federal court unless that state has consented to suit, or unless Congress has clearly and expressly abrogated the state's immunity to suit."[21] *Kerchen v. University of Michigan*, 100 F.4th 751, 761 (6th Cir. 2024). *See also Laborers' International Union of North America, Local 860 v. Neff*, 29 F.4th 325, 330 (6th Cir. 2022) (noting that sovereign immunity protects States from litigation except in "limited circumstances" and that "that remains true for the States whether the case is filed in state or federal court, whether the plaintiff is a citizen of the defendant State or not, and whether the lawsuit's target is the State or an official acting on its behalf");

---

[21] As discussed above, here, Plaintiff not only concedes, but actively argues, that the ONG is a state actor for purposes of her § 1983 and state law claims. Thus, the Court need not evaluate whether the ONG is an "arm of the State" for purposes of the instant Motion. *See Laborers' International Union of North America, Local 860 v. Neff*, 29 F.4th 325, 330 (6th Cir. 2022) (noting that sovereign immunity applies only to lawsuits against the State or "an arm of the State," and setting forth four factors to be considered in determining whether a defendant qualifies as "an arm of the State").

32

*Ladd v. Marchbanks*, 971 F.3d 574, 578 (6th Cir. 2020) (explaining that federal courts do not have jurisdiction over suits against the States by their own citizens).

Sovereign immunity also protects state officials sued in their official capacities for money damages from suit in federal court. *Boler v. Early*, 865 F.3d 391, 409-410 (6th Cir. 2017). *See also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such it is not different from a suit against the State itself."); *McCormick v. Miami University*, 693 F.3d 654, 661 (6th Cir. 2012) ("Insofar as McCormick is suing Schilling, Messman-Moore, and Wright in their official capacities for money damages, her claim is also barred by the Eleventh Amendment.") (citing *Will*, 491 U.S. at 71); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015).

Here, Plaintiff asserts § 1983 claims against the ONG and Defendants Wilker, Gillum, and Bogan in their official capacities. It is undisputed that Plaintiff seeks only monetary damages, and does not seek declaratory or injunctive relief. Thus, unless an exception to sovereign immunity applies, the ONG and Defendants Wilker, Gillum, and Bogan in their official capacities are entitled to Eleventh Amendment sovereign immunity with respect to Plaintiff's § 1983 denial of access and civil conspiracy claims.

It is well established that there are three exceptions to Eleventh Amendment sovereign immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908) applies. *Boler*, 865 F.3d at 410. *See also Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016). "In order to fall within the *Ex Parte Young*

33

exception, a claim must seek prospective relief to end a continuing violation of federal law."[22]  *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013).  *See also Russell*, 784 F.3d at 1047 (same).

In the instant case, the second exception noted above does not apply because Congress has not abrogated Ohio's immunity to suit under § 1983.  *See Will,* 491 U.S. at 66 (stating that Congress did not intend to "disturb the States' Eleventh Amendment immunity" by passing § 1983); *Boler,* 865 F.3d at 410 (same).  The third (or *Ex parte Young*) exception also does not apply because it is undisputed that Plaintiff does not seek prospective injunctive relief in the instant case.  Indeed, Plaintiff does not argue that either the second or third exceptions to sovereign immunity apply.  Plaintiff does, however, argue that the first exception to immunity applies.  Specifically, Plaintiff maintains that the ONG waived its Eleventh Amendment immunity defense through its participation in the instant action.  (Doc. No. 122 at PageID#s 1141-1143.)

"A state may waive its immunity through its litigation conduct; but the touchstone of waiver doctrine is intent—the state's litigation conduct must clearly indicate the state's intent to waive its immunity."  *Barachkov v. Davis*, 580 Fed. Appx. 288, 299 (6th Cir. 2014) (citing *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 533 U.S. 613, 620 (2002)).  "Consent to a suit may be indicated expressly, or 'take the form of a voluntary appearance and defense on the merits in federal court.'"  *Boler*, 865 F.3d at 410 (quoting *Lawson v. Shelby Cty.*, 211 F.3d 331, 334 (6th Cir. 2000)).  For a State to waive its sovereign immunity through litigation conduct, however, "its intent to do so must

---

[22] As the Sixth Circuit explained: "The *Ex parte Young* doctrine applies when the lawsuit involves an action against state officials, not against the state itself.  Under the doctrine, 'a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law, regardless of whether compliance might have an ancillary effect on the state treasury.'  'It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights.'  However, the *Ex parte Young* doctrine 'does not ... extend to any retroactive relief.'" *Puckett v. Lexington-Fayette Urban County Government*, 833 F.3d 590, 598 (6th Cir. 2016) (internal citations omitted).

be 'clear.'" *Kerchen*, 100 F. 4th at 762 (quoting *Lapides,* 535 U.S. at 620).  "A clear intent to waive immunity may be inferred when a state's litigation conduct is inconsistent and unfair."  *Barachkov,* 580 Fed. Appx. at 299.  "Waiver doctrine thus prevents the state from gaining an unfair litigation advantage by prohibiting a state from testing the waters with respect to the merits of its claim only to assert sovereign immunity once it believes its claim will fail."  *Id*.  "That is, a state waives its sovereign immunity where its dilatory assertion of immunity is a 'tactical decision.'"  *Id*. (quoting *In re Bliemeister*, 296 F.3d 858, 862 (9th Cir. 2002)).  *See also Lapides*, 535 U.S. at 620 (characterizing a purpose of the doctrine constructive-waiver doctrine as prohibiting states from selectively using immunity "to achieve litigation advantages").

"Waiver is a case-specific inquiry, focused on the course of a State's litigation conduct."  *Barachkov*, 580 Fed. Appx. at 299.  By way of example, the Sixth Circuit has held that a State waived sovereign immunity where it waited to raise an Eleventh Amendment defense "after engaging in substantial discovery, filing a motion for summary judgment," and receiving a "final adverse ruling" on that motion from the district court.  *Ku v. Tennessee*, 322 F.3d 431, 435 (6th Cir.2003).  By contrast, a State did not waive sovereign immunity through litigation conduct where it participated in settlement negotiations, raised a preemption argument in a motion to dismiss, and presented a merits defense to the plaintiffs' motion for preliminary injunction.  *Boler*, 865 F.3d at 411.  Additionally, and notably, the Sixth Circuit has found that a State does not waive its sovereign immunity where it explicitly raises sovereign immunity in a motion to dismiss.  *Kerchen,* 100 F.4th at 762.  *See Puckett*, 833 F.3d at 598, n. 1 ("The Commonwealth did not file an answer but rather raised the immunity defense in its motion to dismiss.  That was sufficient to defeat any argument that the immunity issue had been waived.")

Here, Plaintiff argues that the ONG should be deemed to have waived Eleventh Amendment immunity because the ONG Defendants (1) were "properly served as agents of a department of the state of Ohio as of March 4, 2024;" (2) engaged in a "wholly unnecessary 'cat and mouse' game" by filing the Notice of Deficient Service and briefing in support thereof; and (3) filed a Notice of Substitution supported by then-U.S. Attorney Lutzko's Certification and the Wilker, Bogan, and Gillum Declarations.  (Doc. No. 122 at PageID#s 1142-1143.)  Plaintiff asserts that the ONG Defendants have waived sovereign immunity through their litigation conduct because they "caused immeasurable delays, hardship, and expense for over a year and made numerous filings prior to their instant Motion to Dismiss without so much as a mention of Eleventh Amendment immunity."  (*Id.*)  In response, the ONG maintains that its participation in this litigation does not create a waiver because this case is still in its early stages, discovery has not yet begun, and the ONG "asserted sovereign immunity at the earliest opportunity to present a substantive defense."  (Doc. No. 126 at PageID# 1193.)

The Court agrees with the ONG.  While the ONG has filed Notices and briefing in support of its assertion that it must be served in accordance with Rule 4(i) because it is a federal actor for purposes of the instant action, the Court finds that the ONG's litigation conduct does not rise to the level of a clear waiver of Eleventh Amendment sovereign immunity.  The issue of whether the ONG Defendants were required to be served as federal actors under Rule 4(i) was a preliminary jurisdictional issue – not a defense on the merits indicating waiver of immunity.  Moreover, as the ONG correctly notes, it asserted sovereign immunity at the very first opportunity (i.e., in a Motion to Dismiss) and prior to engaging in any discovery or receiving an adverse ruling on the merits by this Court.  As the Sixth Circuit recently noted, "this alone is enough to find that [the ONG] did not waive

36

its sovereign immunity defense." *Kerchen*, 100 F.4th at 762. *See also Puckett*, 833 F.3d at 598, fn. 1. Accordingly, Plaintiff's argument that the ONG Defendants waived sovereign immunity through their litigation conduct is without merit.

Citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974), Plaintiff next argues that it would be premature for this Court to dismiss her § 1983 official capacity claims on the basis of sovereign immunity and that the Court should instead "allow the factual record to develop." (Doc. No. 122 at PageID# 1140-1141.) Plaintiff asserts that "[t]this case, as in *Scheuer,* is in its infancy with only a sparse record before the Court, most of which consists of self-serving affidavits and proclamations from the ONG Defendants." (*Id.*) Plaintiff argues that the Court should "deny the ONG Defendants' Motion to Dismiss the official capacity claims and allow the case to proceed so that the factual record can be further developed." (*Id.*) In response, the ONG argues that *Scheuer v. Rhodes, supra* "is irrelevant to this case as it applies an outdated 'totality of the circumstances' test for qualified immunity," which has been explicitly overruled by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). (Doc. No. 126 at PageID# 1191.) The ONG further maintains that "this Court routinely grants motions to dismiss based on Eleventh Amendment immunity, prior to discovery or the filing of Answers." (*Id.*)

In *Scheuer*, the estates of three students who died in the "period of alleged civil disorder on the campus of Kent State University in Ohio during May 1970" brought suit against the Governor of Ohio, the Adjutant General and his assistant, various named and unnamed officers and enlisted members of the ONG, and the president of Kent State University. *Scheuer*, 416 U.S. at 234. Seeking damages, Plaintiffs alleged a claim under § 1983, as well as pendent state law claims. *Id*. The district court held that the defendants were being sued in their official capacities and dismissed the complaints

37

for lack of subject matter jurisdiction "on the theory that these actions ... were, in substance and effect, against the State of Ohio and thus barred by the Eleventh Amendment." *Id*. at 234, 235.  The Sixth Circuit affirmed, "agreeing that the suit was in legal effect one against the State of Ohio and, alternatively, that the common-law doctrine of executive immunity barred action against the state officials who are respondents here." *Id*. at 234.

On appeal, the Supreme Court considered "the narrow threshold question whether the District Court properly dismissed the complaints." *Id*. After setting forth the law regarding sovereign immunity, the Court determined that plaintiffs "allege facts that demonstrate they are seeking to impose *individual and personal liability on the named defendants* for what they claim ... was a deprivation of federal rights by these defendants under color of state law." *Id*. (emphasis added). The Court concluded that "[w]hatever the plaintiffs may or may not be able to establish as to the merits of their allegations, their claims, as stated in the complaints... are not barred by the Eleventh Amendment." *Id*.  The Court then went on to recognize a qualified (rather than absolute) immunity defense for officers of the executive branch of government, which rested on a "totality of the circumstances" test comprised of both objective and subjective components.  *Id*. at 247-248.  The subjective component (which was subsequently eliminated in *Harlow, supra*)[23] involved an inquiry into whether or not the official acted in good faith.  *Id*.  The Supreme Court found that the district

_____

[23] As the Supreme Court later explained, the "totality of the circumstances" test that was applied in *Scheuer* comprised two separate inquiries: "an inquiry into the objective reasonableness of the defendant official's conduct in light of the governing law, and an inquiry into the official's subjective state of mind." *Davis v. Scherer*, 468 U.S. 183, 191 (1984). "*Harlow v. Fitzgerald, supra*, rejected the inquiry into state of mind in favor of a wholly objective standard." *Id*.  Under *Harlow*, officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. Whether an official may prevail in his qualified immunity defense depends upon the "objective reasonableness of [his] conduct as measured by reference to clearly established law." *Id*. "No other 'circumstances' are relevant to the issue of qualified immunity."  *Davis*, 468 U.S. at 191.

38

court had erroneously dismissed the complaints at the pleading stage because "there was no evidence before the courts from which such a finding of good faith could be properly made." *Id*. at 248.

Here, the Court finds that Plaintiff's reliance on *Scheuer* is misplaced. As discussed above, the Supreme Court construed the claims against the defendants in that case as individual (rather than official) capacity claims and analyzed the district court's dismissal of the complaints under a now-outdated qualified immunity standard. Thus, this Court does not interpret *Scheuer* as holding that district courts should refrain from deciding, at the pleading stage, the applicability of Eleventh Amendment immunity to § 1983 official capacity claims against state officials. Moreover, the Sixth Circuit has expressly rejected the argument that district courts should permit discovery before ruling on the issue of sovereign immunity. In *Kerchen, supra*, plaintiffs filed an action against the University of Michigan and Dr. James Wood in his official and individual capacities, asserting claims under § 1983 and state law. *Kerchen*, 100 F.4th at 757. Defendants moved to dismiss under Rule 12(b)(1) arguing (among other things) that the University and Dr. Woods in his official capacity were entitled to sovereign immunity. *Id*. The district court denied the defendants' motion without expressly addressing the sovereign immunity issue and ordered limited discovery. *Id*. at 758.

The Sixth Circuit reversed. The court found that the district court erred in failing to address the issue of sovereign immunity before ordering discovery, as follows:

> On appeal, Defendants argue that the district court erred in denying sovereign immunity to the University and Woods in his official capacity, and qualified immunity to Woods in his individual capacity. **As an initial matter, the district court should have ruled on Defendants' immunity defenses before ordering discovery**. The district court relied on this Court's decision in *Nair v. Oakland County Community Mental Health Authority* to defer ruling on Defendants' sovereign immunity arguments until after limited discovery, but this reliance was misplaced. 443 F.3d 469, 476 (6th Cir. 2006). *Nair* did not hold that a district court could avoid ruling on a sovereign immunity defense and proceed to order discovery. Instead, it held that a district court could choose to dismiss a case based on the merits if the defendants

39

present sovereign immunity as an alternative argument and if the merits present a more expeditious method for dismissing the case entirely. *Id.* at 476–77.

> For *Nair* to hold otherwise would contradict the multiple other times that this Court has treated sovereign immunity as a jurisdictional issue. *See, e.g., Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 425 (6th Cir. 2016). **It would also contradict the longstanding principle that sovereign immunity protects a state's dignity interests in avoiding not just ultimate liability, but litigating a suit itself.** *See P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 145, 113 S.Ct. 684; *see also Kelly v. Great Seneca Fin. Corp.*, 447 F.3d 944, 949 (6th Cir. 2006) ("[R]equiring a State to appear in federal court and undergo trial when it is entitled to sovereign immunity (even if it is later shielded on the merits) harms the State's dignitary interests."). A state loses the "fundamental" protection offered by the Eleventh Amendment at each step that litigation proceeds without deciding whether a state is entitled to sovereign immunity. *P.R. Aqueduct & Sewer Auth.,* 506 U.S. at 145, 113 S.Ct. 684. **To vindicate states' dignity interests implicated by their sovereign immunity to suit, district courts must issue a ruling on properly raised sovereign immunity defenses—even if raised as an alternative defense—before permitting litigation to proceed.**

*Id.* at 760-761 (emphasis added). The Sixth Circuit went on to find that all claims against the University and Dr. Woods in his official capacity were barred by sovereign immunity. *Id.* at 761-762.

In light of the above, the Court rejects Plaintiff's argument that this Court should "allow the factual record to develop" before ruling on the issue of sovereign immunity. Thus, and for all the reasons discussed *supra*, the Court finds that Plaintiff's § 1983 claims against ONG and Wilker, Gillum, and Bogan in their official capacities are barred by Eleventh Amendment sovereign immunity. Counts One and Five against ONG and Wilker, Gillum, and Bogan in their official capacities are, therefore, dismissed pursuant to Rule 12(b)(1).

### 2. State Claims (Counts Two, Seven, Eight, and Ten)

Plaintiff also alleges four pendent state law claims against the ONG and Wilker, Gillum, and Bogan in their official capacities; i.e., (1) Violation of Ohio Rev. Code § 2921.32 (Obstruction of Justice) (Count Two); (2) Violation of Ohio Rev. Code § 2923.15 (Using Weapons While Intoxicated)

(Count Seven); (3) Civil Conspiracy (Count Eight); and (4) Negligent Retention (Counts Ten).  (Doc. No. 44.)  The ONG argues, and this Court agrees, that Plaintiff's pendent state law claims against the ONG and Wilker, Gillum, and Bogan in their official capacities are likewise barred by the Eleventh Amendment.  As the Sixth Circuit has explained:

> The Supreme Court has squarely held that pendent state law claims against state officials in their official capacity are barred by the Eleventh Amendment.... The federal courts are simply not open to such state law challenges to official state action, absent explicit state waiver of the federal court immunity found in the Eleventh Amendment.

*Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520–21 (6th Cir. 2007) (citing *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 117–21 (1984)).  *See also McCormick v. Miami University*, 693 F.3d 654, 664 (6th Cir. 2012); *Beirsdorfer v. LaRose*, 2021 WL 3702211 at * 14 (6th Cir. Aug. 20, 2021). Notably, "Congress has not abrogated the Eleventh Amendment for state law claims, *see Raygor v. Regents of Univ. of Min*n., 534 U.S. 533, 542 (2002), nor has Ohio waived sovereign immunity." *McCormick*, 693 F.3d at 664.

Accordingly, and for all the reasons set forth above, the Court finds that Plaintiff's pendent state law claims against ONG and Wilker, Gillum, and Bogan in their official capacities are barred by Eleventh Amendment sovereign immunity.  Counts Two, Seven, Eight and Ten against ONG and Wilker, Gillum, and Bogan in their official capacities are, therefore, dismissed pursuant to Rule 12(b)(1).[24]

### 3.  FOIA Claim (Count Nine)

---

[24] As the Sixth Circuit has explained, "[a]n Eleventh Amendment dismissal of pendent state law claims is properly 'with prejudice' to subsequent *federal court* suit, but it does not by itself preclude a *state court* suit from raising the same claims." *Experimental Holdings, Inc.*, 503 F.3d at 521 (emphasis in original).

41

The ONG argues that it is a federal actor for purposes of Plaintiff's FOIA claim and, further, that Plaintiff's FOIA claim is moot because she "has received all that she is entitled to receive" under that statute, including copies of the Jacobs Report.  (Doc. No. 116-1 at PageID# 1078.)  In her Brief in Opposition, Plaintiff does not contest the ONG's assertion that she has received all the information to which she is entitled under the FOIA.  (Doc. No. 122 at PageID# 1147-1148.)  Nor does she challenge the ONG's assertion that the ONG is a federal actor for purposes of her FOIA claim.  (*Id*.) Plaintiff does argue, however, her FOIA claim is not moot because the ONG "forced [her] to litigate the release of the Jacobs Report in three (3) separate cases across (2) courts, causing great delay ... as well as unnecessary litigation fees and expenses." (*Id*.)  Plaintiff maintains that due to ONG's "obstructionist behavior," the Court should award her reasonable attorney's fees and litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E).  (*Id*.)  In its Reply Brief, the ONG argues that Plaintiff's claim for attorney's fees is premature, as Plaintiff has not demonstrated that she is, in fact, entitled to fees or filed a fee petition.  (Doc. No. 126 at PageID# 1190-1191.)

The Court first finds that Plaintiff has waived any opposition to the ONG's arguments that (1) the ONG is a federal actor for purposes of Plaintiff's FOIA claim; and (2) Plaintiff has received all the information to which she is entitled under the FOIA.  *See Humphrey v. U.S. Attorney Gen.'s Office,* 279 Fed. Appx 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived).  Thus, the Court concludes that the ONG[25] is a federal actor for purposes

---

[25] For the reasons discussed in more detail *infra* in Section IV.C.1.c of this Opinion, the Court finds that Plaintiff's FOIA claim shall proceed solely against the ONG (and not against Defendants Wilker, Gillum, and/or Bogan in their individual capacities).

of Count Nine and that Plaintiff's FOIA claim is moot to the extent she requests the production of certain documents relating to Nathan Garrett's death.

However, the Court agrees with Plaintiff that her FOIA claim is not subject to dismissal at this time in light of her request for an award of attorney's fees and costs pursuant to 5 U.S.C. § 552. By no later than thirty (30) days from the date of this Order, Plaintiff is ordered to submit a Motion for Attorney's Fees and Costs (and any other monetary relief that she may intend to seek in connection with her FOIA claim) that is fully supported by appropriate documentation. The ONG may file a Brief in Opposition within thirty (30) days of the filing of Plaintiff's Motion, and Plaintiff may file a Reply within fourteen (14) days thereafter.

### C. Motion to Dismiss Individual Capacity Claims against Wilker, Gillum, and Bogan (Doc. No. 115)

Plaintiff also asserts her federal and state claims against Wilker, Gillum, and Bogan in their individual capacities. In their separately filed Motion to Dismiss, these Defendants (hereinafter referred to as "the Individual ONG Defendants") argue that Plaintiff's claims should be dismissed for multiple reasons. (Doc. No. 115-1.) The Individual ONG Defendants first argue that (regardless of whether they are considered federal or state actors for purposes of the instant action) they are entitled to dismissal pursuant to Rule 12(b)(6) because the Amended Complaint fails to set forth sufficient factual allegations relating to them as regards any of Plaintiff's claims. (*Id*. at PageID#s 1036-1039, 1044-1047.) Even assuming that Plaintiff's claims are sufficiently plead, the Individual ONG Defendants assert that they are entitled to qualified immunity with respect to Plaintiff's § 1983 claims for the same reasons articulated by this Court in its August 9, 2024 Memorandum Opinion & Order granting, in part, the Morgan County Defendants' Motion to Dismiss. (*Id*. at PageID#s 1039-1041.) Regarding Plaintiff's state law claims, the Individual ONG Defendants argue they are entitled to

43

immunity under the FTCA because they were acting within the scope of their federal employment at all times relevant to the Amended Complaint. (*Id*. at PageID#s 1042-1044.) Lastly, the Individual ONG Defendants maintain they are entitled to dismissal of Plaintiff's FOIA claim because FOIA applies only to agencies defined in 5 U.S.C. § 552(f)(1), and not to individuals. (*Id*. at PageID# 1047.)

In response, Plaintiff argues that she has properly pled her § 1983 claims against the Individual ONG Defendants, asserting that "the Amended Complaint clearly states their transgressions." (Doc. No. 122 at PageID# 1150-1156.) Assuming that her § 1983 claims are properly pled, Plaintiff maintains the Individual ONG Defendants are not entitled to qualified immunity. (*Id*.) Regarding her state law claims, Plaintiff asserts that she properly pled her Obstruction of Justice, Civil Conspiracy, and Negligent Retention claims (Counts Two, Eight, and Ten) against the Individual ONG Defendants. [26] (*Id*. at PageID#s 1145-1146, 1157-1158.) Plaintiff fails, however, to acknowledge or address the Individual ONG Defendants' argument that she failed to sufficiently plead her claim for Using Weapons While Intoxicated (Count Seven). Plaintiff also fails to acknowledge or address the Individual ONG Defendants' argument that her FOIA claim fails because FOIA applies only to agencies, and not to individuals.

Once again, this Court need not determine whether the Individual ONG Defendants were acting in a state or federal capacity for purposes of the individual capacity claims set forth in the Amended Complaint. Even assuming *arguendo* that the Individual ONG Defendants are state actors for purposes of Plaintiff's § 1983 and state law claims (as Plaintiff argues), the Court finds that the

---

[26] Plaintiff also argues that the Individual ONG Defendants are not entitled to immunity under the FTCA because there were state (as opposed to federal) actors for purposes of the Amended Complaint.

44

Individual ONG Defendants are entitled to judgment in their favor pursuant to Rule 12(b)(6) for the reasons set forth below.

1. **Failure to Sufficiently Plead any Federal or State Claims under Rule 12(b)(6)**

The Court will address the Individual ONG Defendants' arguments that Plaintiff failed to sufficiently plead her § 1983, state law, and FOIA claims separately, below.

a. **§ 1983 Individual Capacity Claims**

The Individual ONG Defendants argue that Plaintiff's § 1983 individual capacity claims against Gillum should be dismissed pursuant to Rule 12(b)(6) because he "is not in the group identified by Plaintiff as 'the ONG Defendants' and Plaintiff otherwise fails to plead any facts or legal claims pertaining to" him. (Doc. No. 115-1 at PageID# 1036.) In this regard, the Individual ONG Defendants note that the sole allegation in the Amended Complaint relating to Gillum is that, after Develin called the ONG to report the incident with Nathan Garrett, Gillum "arrived at the cabin with a van." (*Id*. at PageID# 1037) (citing Doc. No. 44, ¶ 45.) The Individual ONG Defendants next assert that "the Amended Complaint is devoid of any facts even so much as associating [] Wilker and [] Bogan to any of Plaintiff's claims for relief," either personally or in their supervisory capacities. (*Id*.) They argue that "Plaintiff makes the leap that because she identified the Individual [ONG] Defendants as members of the ONG, they must be held individually liable for any action taken by anyone in the ONG." (Doc. No. 124 at PageID# 1168.) The Individual ONG Defendants assert that "this is categorically incorrect" and warrants dismissal. (*Id*.)

In response, Plaintiff first asserts that the Amended Complaint's failure to include Gillum in the defined term "the ONG Defendants" was nothing more than a scrivener's error. (Doc. No. 122 at PageID# 1150.) Plaintiff argues that Gillum is "a named defendant in this action and his actions

45

are described in detail using his individual name." (*Id*.) Plaintiff then maintains that she sufficiently pled her § 1983 individual capacity claims because the Amended Complaint alleges that (1) Gillum removed the Guardsmen Defendants from the scene against the objections of the MCSO; (2) by doing so, the Individual ONG Defendants allowed the Guardsmen Defendants to "coordinate their stories;" and (3) the Individual ONG Defendants thereafter failed to conduct any type of investigation in the months following Nathan's shooting. (*Id*. at PageID# 1151, 1155.)

"Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). *See also Murphy v. Grenier*, 406 Fed. Appx. 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability"). Thus, to state an individual capacity claim against a government official, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 Fed. Appx. 762, 764 (6th Cir. 2002). *See also Bojicic v. DeWine*, 569 F.Supp.3d 669, 679 (N.D. Ohio 2021); *Wolfe v. Ohio Department of Corrections and Rehabilitation*, 2022 WL 1591304 at * 4 (N.D. Ohio May 19, 2022). A plaintiff must also plead how each individual defendant caused the plaintiff's alleged constitutional harm. *See Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.") (emphasis in original); *Boddie v. City of Lima, Ohio*, 2018 WL 1847934 at *2 (N.D. Ohio April 18, 2018) ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

46

Here, the Amended Complaint contains very few specific allegations regarding Gillum, Wilker, and Bogan.  Specifically, and upon careful review, the Court could only locate the following allegations that mention these Defendants by name:

> 8.  Defendant Jack Gillum ("Gillum") is and was, at all times relevant herein, an individual residing in Morgan County and the ONG First Sergeant of the AAD. At the time of the filing of this action, Gillum was removed from the AAD and re-assigned to other duties within the ONG.
>
> 9.  Defendant Angela Wilker ("Wilker") is and was, at all times relevant herein, an individual residing in Morgan County and the ONG Captain of the AAD. At the time of the filing of this action, Wilker was removed from the AAD and re-assigned to other duties within the ONG.
>
> 10.  Defendant Lawrence Bogan ("Bogan") is and was, at all times relevant herein, an individual residing in Morgan County and the ONG Commanding Officer of the AAD (ONG, Harris, Wilker, and Bogan are collectively referred to throughout as the "ONG Defendants").
>
> ***
>
> 45.  At approximately 12:30 a.m. Develin placed a call to the 174th AAD and advised them that Mr. Garrett was deceased due to a gunshot wound to the head.  About an hour later, Sergeant Jack Gillum arrived at the Cabin with a van.  Deputy Mayle advised them that the stories of the Guardsman Defendants and Nye were inconsistent and that he believed that they were being deceitful.

(Doc. No. 44 at ¶¶ 8-10, 45.)  The Amended Complaint does, however, contain several allegations regarding "the ONG Defendants" collectively, including the following:

> 67.  As employees and officers of the State of Ohio, the ONG Defendants, in order to cover for the Guardsman Defendants, with the active assistance of the MCSO, McGrath, Jenkins and Mayle, intentionally obstructed the investigation into the death of Mr. Garrett by, inter alia, removing the Guardsman Defendants from the scene of the crime and later disposing of evidence (cleaning of the scene in the following days, failing to take any trace evidence samples from the Guardsman Defendants and letting them clean, sober-up and then report sanitized to the MCSO the following day). ***

47

(*Id*. at ¶ 67.)[27]  Plaintiff further alleges that "the ONG Defendants and the MCSO had an overly chummy relationship wherein one would cover for the other when issues of criminal acts and jurisdiction crossed paths."  (*Id*. at ¶ 70.)  She alleges that "the ONG Defendants sat by with [] their hands in their pockets until orders from high above came down to start looking into domestic terrorism concerns were voiced, or actively tolerated the criminal wrongdoing of Sergeant Tom Develin."  (*Id*.)  Lastly, Plaintiff alleges that "by reinstating most if not all of the Guardsmen Defendants who were not criminally charged by law enforcement agencies other than the MCSO, the ONG Defendants have ratified the criminal misconduct of those individuals."  (*Id*. at ¶ 71.)

For the following reasons, the Court finds that Plaintiff has failed to sufficiently plead individual capacity claims against the Individual ONG Defendants for either denial of access or conspiracy under § 1983.  As an initial matter, given that Wilker, Gillum, and Bogan are the only ONG Defendants that are named in the Amended Complaint in their individual capacities,[28] the Court will accept Plaintiff's assertion that the failure to include Gillum in the group "ONG Defendants" in the Amended Complaint (¶ 10, *supra*) was a scrivener's error.  The Court will therefore construe references in the Amended Complaint to the "ONG Defendants" to include the ONG, Wilker, Gillum, and Bogan.

---

[27] Similarly, Plaintiff alleges, in Count Five, that "[t]he ONG Defendants and MCSO Defendants ... did engage in a single plan with the conspiratorial objective to intentionally deprive Plaintiff access to the courts by intentionally and maliciously destroying evidence and obstructing the investigation into the death of Mr. Garrett." (*Id*. at ¶ 101.)  Plaintiff further alleges that: "[t]he ONG Defendants and MCSO Defendants did commit overt acts in furtherance of their conspiracy by way of removing the Guardsman Defendants from the scene of the crime, allowing the Guardsman Defendants to be removed from the scene of the crime, destroying evidence by intentionally disposing of the bullet and shell casing, and intentionally failing to conduct an investigation into the death of Mr. Garrett."  (*Id*. at ¶ 102.)

[28] As noted *supra*, Major General Harris is not individually named as a Defendant in this action.  (Doc. No. 44 at PageID# 329.)

The Court nonetheless finds that Plaintiff has failed to state a claim under § 1983 against either Wilker, Bogan, or Gillum in their individual capacities.  Regarding Wilker and Bogan, Plaintiff fails to plead any facts attributing any specific actions taken by, or at the direction of, these Defendants.  Indeed, the only factual allegations in the Amended Complaint that specifically mention Wilker and Bogan by name simply set forth their respective ranks and state that "at the time of the filing of this action, Wilker was removed from the AAD and re-assigned to other duties within the ONG."  (Doc. No. 44 at ¶¶ 9, 10.)  Critically, Plaintiff pleads no facts whatsoever that suggest that either Wilker or Bogan were personally involved in any of the specific conduct that forms the basis of her denial of access and civil conspiracy claims. For example, at no point in the Amended Complaint does Plaintiff allege that Wilker or Bogan took any specific action to "intentionally instruct the investigation" or improperly "dispose of evidence."  Nor does Plaintiff allege that either Wilker or Bogan had any responsibility for, or involvement in, any further investigation that was later undertaken by the ONG.

Plaintiff also fails to plead sufficient facts regarding Gillum.  As set forth above, the only factual allegations that specifically relate to Gillum (aside from allegations setting forth his rank and the fact that he was later re-assigned) are that (1) he "arrived at the Cabin [at approximately 12:30 a.m.] with a van;" and (2) was advised by Deputy Mayle at that time that "the stories of the Guardsmen Defendants and Nye were inconsistent and that he [i.e., Mayle] believed they were being deceitful."  (Doc. No. 44 at ¶¶ 8, 45.)  The Court finds that the above allegations are insufficient to plead that Gillum was personally involved in the deprivation of Plaintiff's constitutional rights. Standing alone, the allegations that Gillum "arrived with a van" and was told by Mayle that the Guardsmen Defendants' and Nye's stories were inconsistent and deceitful are not sufficient to plead

49

that Gillum disposed of evidence, intentionally instructed the investigation into Garrett's death, or "ratified the criminal misconduct" of the Guardsmen Defendants.

Plaintiff appears to assert that allegations referring to the "ONG Defendants" jointly is sufficient to plead Gillum, Wilker and Bogan's personal involvement in the deprivation of Plaintiff's rights. The Court disagrees. Courts have found that a plaintiff's categorical references to a group of defendants are insufficient to allege specific actions on the part of individual defendants for purposes of a § 1983 individual capacity claim. *See, e.g., Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (affirming district court's dismissal of individual capacity claims against two defendants because the complaint made "only categorical references to 'Defendants'"); *Bojicic,* 569 F.Supp.3d at 679 (in § 1983 action, finding that plaintiffs' allegations "lump[ing] the defendants together" did not "cure their failure to link individual defendants with specific actions because the law requires more."); *Wolfe,* 2022 WL 1591304 at * 5 (in § 1983 action, finding that "Plaintiff's categorical references to the 'various above captioned corrections officers' throughout the Complaint are insufficient to allege specific actions on [the individual Defendants'] behalf.").

Lastly, to the extent Plaintiff argues that the Individual ONG Defendants are individually liable under a *respondeat superior* theory of liability, the Court rejects this argument. The Sixth Circuit has made clear that "Section 1983 liability ... cannot be premised solely on a theory of *respondeat superior*, or the right to control employees." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). *See also Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982). Rather, supervisory officials may only be held liable in their individual capacities if they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Heyerman*, 680 F.3d at 647 (quoting *Hays*, 668 F.2d at 874.) "At a minimum, a plaintiff must show that the official

50

at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays,* 668 F.2d at 874.  Here, Plaintiff does not plausibly allege any facts about the specific conduct of Wilker, Gillum, and/or Bogan suggesting that they implicitly authorized, approved, or knowingly acquiesced in the allegedly unconstitutional conduct at issue.  *Heyerman*, 680 F.3d at 648.  Rather, Plaintiff generally alleges that "the ONG Defendants" participated and/or acquiesced in the alleged constitutional violations set forth in Counts One and Five.  The Court finds this to be insufficient for all the reasons set forth above.

Accordingly, the Court finds that Plaintiff fails to state a claim upon which relief can be granted as to the Individual ONG Defendants in their individual capacities for either denial of access or civil conspiracy under § 1983.[29]

### b.    State Law Individual Capacity Claims

The Individual ONG Defendants next argue that Plaintiff failed to sufficiently plead her state law individual capacity claims because she "does not plead any specific allegations of wrongdoing" by Wilker, Gillum, or Bogan.  (Doc. No. 115-1 at PageID# 1044-1047.)  The Court will address Plaintiff's state law individual capacity claims separately, below.

---

[29] Even assuming *arguendo* that Plaintiffs' § 1983 individual capacity claims are sufficiently pled, the Court finds that they are nonetheless subject to dismissal because Wilker, Gillum, and Bogan are entitled to qualified immunity for all the reasons set forth in this Court's August 9, 2024 Memorandum Opinion & Order granting qualified immunity to the Morgan County Defendants.  (Doc. No. 100 at PageID#s 913-936.)  Specifically, the Court finds that Plaintiff has failed to sufficiently allege "substantial prejudice to her underlying claim that cannot be remedied by the state court" or "a request for relief which is now otherwise unattainable." *Jackson*, 64 F.4th at 746 (quoting *Flagg*, 715 F.3d at 174.)  Plaintiff argues that, in granting qualified immunity to the individual Morgan County Defendants, this Court wrongly applied a "legal standard that is nearly impossible or unrealistic to sustain at the pleading stage." (Doc. No. 122 at PageID# 1152.)  She urges the Court not to overlook the remedial purpose of § 1983 and emphasizes that "fairness and justice are best served when a court disposes of a case on the merits."  (*Id.* at PageID#s 1133-1134, 1153.)  However, Plaintiff does not identify any new Sixth Circuit or Supreme Court authority that materially changes the elements of backwards-looking denial of access claims, or the analysis of such claims at the pleading stage.  Nor does Plaintiff explain why she could not have filed a John Doe wrongful death claim.  Accordingly, the Court finds that, even if properly pled, Plaintiff's individual capacity § 1983 denial of access and civil conspiracy claims against Wilker, Gillum, and Bogan would be subject to dismissal on the basis of qualified immunity.

### 1.      Obstruction of Justice (Count Two)

The Individual ONG Defendants argue that Plaintiff's Obstruction of Justice claim (Count Two) should be dismissed because "Plaintiff fails to plead any facts that state any decipherable claim against the Individual [ONG] Defendants or that they did 'hinder the discovery, apprehension, prosecution, conviction, or punishment of another, did destroy or conceal physical evidence of a crime or act and induce any person to withhold testimony or information.'" (Doc. No. 115-1 at PageID# 1045.)  In response, Plaintiff asserts that she has "alleged numerous facts against the Individual Defendants" that constitute Obstruction of Justice under Ohio Rev. Code § 2921.32(A).[30] (Doc. No. 122 at PageID# 1157.)  Specifically, Plaintiff argues that "the Individual ONG Defendants removed the Guardsman Defendants from the scene of Nathan's death despite the objection of Deputy Mayle of the MCSO, actively concealed and destroyed physical evidence, and communicated false information to the Garretts which impeded their own independent investigation of this matter."  (*Id*.) Plaintiff also asserts that "there is reason to believe based upon the discovered messages between Develin and purportedly Defendant Van Liere, that the Individual [ONG] Defendants were communicating the status of any investigations to them." (*Id*.)

For the following reasons, the Court finds that Plaintiff has failed to sufficiently plead factual allegations that Wilker, Gillum, or Bogan obstructed justice in violation of Ohio Rev. Code § 2921.32(A).  As the Individual ONG Defendants correctly note, Plaintiff does not direct this Court's

---

[30] This statute provides, in relevant part, that: "No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime, *** shall do any of the following: *** (4) Destroy or conceal physical evidence of the crime or act, or induce any person to withhold testimony or information or to elude legal process summoning the person to testify or supply evidence; (5) Communicate false information to any person;  (6) Prevent or obstruct any person, by means of force, intimidation, or deception, from performing any act to aid in the discovery, apprehension, or prosecution of the other person or child." Ohio Rev. Code § 2921.32(A)(4) - (6).

attention to any factual allegations in the Amended Complaint that allege any specific action or conduct by either Wilker, Gillum, or Bogan, individually, to "destroy or conceal physical evidence," 'induce any person to withhold testimony or information," "communicate false information," or "prevent or obstruct" any person from discovering or prosecuting an alleged wrongdoer.  Nor does the Amended Complaint contain any factual allegations whatsoever connecting the reference in Develin's text message to "leadership" telling him that they are "on our side" (Doc. No. 44 at ¶ 63), to either Wilker, Gillum, or Bogan.  Moreover, the Court finds that Plaintiff's allegation that Gillum "arrived with a van" is not sufficient, standing alone, to plead a violation of § 2921.32(A).

The Amended Complaint does, however, set forth blanket allegations that "the ONG Defendants" engaged in conduct that violates § 2921.32(A)(4)-(6).  Neither party directly addresses (or cites any authority regarding) whether (outside of the § 1983 context) allegations regarding the ONG Defendants' "collective conduct" are sufficient to survive dismissal at the pleading stage.  As district courts within this Circuit have explained, the issue of "[w]hether 'group pleading' of defendants violates Rule 8(a) is often dependent on the facts and claims at issue." *Igo v. Sun Life Assurance Co. of Canada*, 652 F. Supp.3d 929, 935 (S.D. Ohio 2023) (citing cases).  As a general rule, a complaint violates the pleading requirements of Rule 8 when it fails to specify the harms allegedly caused by each individual defendant.  *See Niederst v. Minuteman Capital, LLC*, 2024 WL 3522413, at *5 (N.D. Ohio July 24, 2024).  For this reason, some courts have found "lumping the Defendants together for the purposes of all allegations fails to give the individual Defendants proper notice of what they have allegedly done wrong." *Aaron v. Durrani*, 2014 WL 996471 at * 3 (S.D. Ohio Mar. 12, 2014). *See also Niederst*, 2024 WL 3522413 at *5; *Select Rehab., LLC v. EmpowerMe Rehab. Ky. LLC*, 2021 WL 3754547 at * 3 (W.D. Ky. Aug. 24, 2021) ("An allegation that 'defendants'

committed some act, 'without any details about who did what is inadequate' under *Iqbal* and *Twombly*, and 'does not propound a plausible contention that a particular person did anything wrong.' ") (citation omitted).

However, pursuant to Rule 8, some district courts have permitted plaintiffs to "group defendants together in the allegations in their complaint so long as it gives the defendants notice of the claims against them and the grounds upon which it rests." *Shah v. Fortive Corp.*, 2024 WL 3226108 at *5 (S.D. Ohio June 27, 2024).  Indeed, district courts within this circuit have concluded that (with respect to non - § 1983 claims), "a group pleading may state a claim against ... collectively defined defendants where plaintiff plausibly alleges facts showing entitlement to relief for the claimed misconduct." *Gold Crest, LLC v. Project Light, LLC,* 525 F. Supp.3d 826, 835 (N.D. Ohio 2021). *See also Hale v. Enerco Grp., Inc.*, 2011 WL 49545 at *4 (N.D. Ohio Jan. 5, 2011) (denying motion to dismiss where plaintiffs plausibly alleged defendants engaged in the same conduct); *Freedom Banc Mortg. Services, Inc. v. O'Harra*, 2012 WL 3862209 at *4 (S.D. Ohio Sept. 5, 2012) (finding that blanket allegations against "defendants" throughout complaint were sufficient under Rule 8 because it was plausible that multiple defendants engaged in, or assisted in, the alleged misconduct).

Specifically, some district courts have concluded that, where "[p]laintiffs have made allegations that multiple [d]efendants have engaged in the same conduct, those allegations are plausible and raise a reasonable expectation that discovery will reveal evidence to support their claims." *Hale*, 2011 WL 49545 at *4.  *See also Faloba v. Ultium Cells LLC*, 2025 WL 1042699 at * 9 (N.D. Ohio April 8, 2025); *Shah*, 2024 WL 3226108, at *5 n.6; *Freedom Banc Mortg. Services, Inc.*, 2012 WL 3862209 at *4.  Accordingly, under certain circumstances, "collecting [defendants] under a defined term then claiming all [defendants] are liable for the same misconduct is, at the

pleading stage, sufficient to give each of them notice of the claims alleged against them." *Gold Crest, LLC*, 525 F. Supp.3d at 835.

In the instant case, however, the Court finds that Plaintiff's broad allegations of collective, undifferentiated wrongdoing by "the ONG Defendants" are insufficient to plead that *Wilker, Gillum, and Bogan* are each individually liable for Obstruction of Justice under Ohio Rev. Code § 2921.32(A). As discussed above, Paragraph 10 of the Amended Complaint defines the group "the ONG Defendants" to include, not only Wilker, Gillum, and Bogan, but also the ONG itself. This is significant because, as set forth *supra,* the Amended Complaint contains numerous factual allegations regarding the conduct of various ONG officials who are not named as Defendants in this action, including Sergeant Russell (¶¶ 47, 53); Sergeant Harris (¶ 58); Lieutenant Snyder (¶¶ 58, 59) and Lt. Colonel Lytton (¶ 59.) Thus, Plaintiff's allegations regarding the collective conduct of "the ONG Defendants" do not make clear which Defendant (the ONG vs. one of the Individual ONG Defendants) is responsible for which action (or failure to act). In other words, unlike those cases in which collective pleading has been permitted, this is not a situation where it is clear from the complaint that "multiple defendants engaged in the same conduct," sufficient to give each individual defendant notice of the claims alleged as to each one of them. Because the allegations in the Amended Complaint fail to sufficiently link any of the Individual ONG Defendants to the alleged misconduct underlying Plaintiff's Obstruction of Justice claim, the Court finds that Plaintiff has failed to provide sufficient notice to Wilker, Gillum, or Bogan of the claims against them and the grounds upon which they rest. *See Aaron*, 2014 WL 996471 at * 3; *Niederst*, 2024 WL 3522413 at *5.

Accordingly, Plaintiff's individual capacity claims against the Individual ONG Defendants for Obstruction of Justice (Count Two) are dismissed.

## 2.      Conspiracy (Count Eight)

The Court likewise finds that Plaintiff failed to sufficiently plead factual allegations that Wilker, Gillum, and Bogan are individually liable for civil conspiracy.  "In Ohio, a civil conspiracy consists of the following: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Lee v. Countrywide Home Loans, Inc*., 692 F.3d 442, 446 (6th Cir. 2012) (quoting *Universal Coach, Inc. v. N.Y.C. Transit Auth., Inc*., 629 N.E.2d 28, 33 (Ohio App. 8th Dist. 1993)). "An underlying unlawful act is required before a civil conspiracy claim can succeed."  *Williams v. Aetna Fin. Co.,* 700 N.E.2d 859, 868 (Ohio 1998) (citing *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio App. 9th Dist. 1996)).  In addition, a conspiracy claim "must be pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Avery v. Rossford, Ohio Trans. Improvement Dist*., 762 N.E.2d 388, 395 (Ohio App. 6th Dist. 2001).

As an initial matter, the Court has already found*, supra,* that Plaintiff has failed to sufficiently allege an underlying lawful act (i.e., Obstruction of Justice) on the part of the Individual ONG Defendants.  Thus, Plaintiff's Civil Conspiracy claim fails on this basis alone.  Moreover, the Court finds that Plaintiff has failed to sufficiently plead that Wilker, Gillum, or Bogan are individually liable for civil conspiracy under Ohio law because the Amended Complaint fails to include any factual allegations that specify separate acts or conduct by any of these Defendants individually that would plausibly state a claim for civil conspiracy (as opposed to allegations of "collective conduct" that fail to provide sufficient notice of the basis of Plaintiff's conspiracy claim as against each of the Individual ONG Defendants).  *See Aaron*, 2014 WL 996471 at * 3; *Niederst*, 2024 WL 3522413 at

*5.   Plaintiff's individual capacity claims against the Individual ONG Defendants for Civil Conspiracy (Count Eight) are, therefore, dismissed.

### 3.      Using Weapons While Intoxicated (Count Seven)

Regarding Plaintiff's Using Weapons While Intoxicated claim (Count Seven), the Individual ONG Defendants argue that they "cannot be held directly liable for a criminal statute concerning using a weapon while intoxicated when there are no allegations that either [] Gillum, [] Wilker, or [] Bogan ever used a weapon while intoxicated." (Doc. No. 115-1 at PageID#s 1045-1046.) The Individual ONG Defendants further argue that they cannot be held liable under a theory of vicarious liability for this claim because Develin's alleged misuse of a weapon was an off-duty, criminal act that was not committed within the scope of his employment.  (*Id*.)  In her Brief in Opposition, Plaintiff fails to acknowledge or address either of the Individual ONG Defendants' arguments.  (Doc. No. 122.)

In light of the above, the Court finds that Plaintiff has waived any opposition to the Individual ONG Defendants' argument that the Amended Complaint fails to state a claim against them for Using Weapons While Intoxicated, either under a theory of direct or vicarious liability.  *See Humphrey,* 279 Fed. Appx at 331.  Plaintiff's individual capacity claims against the Individual ONG Defendants for Using Weapons While Intoxicated (Count Seven) are, therefore, dismissed.

### 4.      Negligent Retention (Count Ten)

Lastly, the Individual ONG Defendants argue that Plaintiff's Negligent Retention claim (Count Ten) fails because Plaintiff "does not allege that in their respective positions they had direct supervision over Develin or that they made any decisions whatsoever regarding Develin's hiring or his retention." (Doc. No. 115-1 at PageID# 1046-1047)  They further assert that, even if Plaintiff

"infers that [the Individual ONG Defendants] had direct supervisory authority over Develin, Plaintiff fails to allege any facts that [they] had knowledge of Develin's history of criminal, tortious or dangerous behavior prior to Mr. Garrett's untimely death." (*Id.*)

In response, Plaintiff argues generally (and without citation to any specific paragraphs in the Amended Complaint) that "[t]he ONG Defendants had actual knowledge that on a date prior to Nathan's death, Develin, along with two (2) other of the Guardsman Defendants, had engaged in the mishandling of firearms while intoxicated which resulted in the discharge of the firearm into the floor of the very cabin where Nathan was killed." (Doc. No. 122 at PageID# 1145.)  Plaintiff further asserts that "[t]he ONG Defendants also had knowledge, actual or constructive, of Develin's mental health issues and prior history of criminal and tortious behavior" but nonetheless "continued to allow Develin to serve not only in the ONG generally, but in a supervisory capacity." (*Id.* at PageID#s 1145-1146.)  Plaintiff maintains that "it was the ONG Defendants' continued retention and failure to properly supervise Develin that led directly to the death of Nathan." (*Id.*)

The Court finds that Plaintiff failed to sufficiently plead factual allegations that Wilker, Gillum, and Bogan are individually liable for Negligent Retention.  Under Ohio law, the elements of a claim for negligent retention are: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of the plaintiff's injuries.  *Watson v. City of Cleveland*, 202 Fed. Appx 844, 857 (6th Cir. 2006) (citing *Linder v. Am. Nat'l Ins. Co.*, 798 N.E.2d 1190, 1197 (Ohio App. 1st Dist. 2003)).  *See also Herndon v. Torres*, 791

58

Fed. Appx. 547, 554 (6th Cir. 2019) (citing *Sygula v. Regency Hosp. of Cleveland E.*, 64 N.E.3d 458, 471 (Ohio App. 8th Dist. 2016).

Here, the Amended Complaint alleges that "the ONG Defendants," collectively, had "knowledge of Develin's mental health condition(s), the treatment therefor, and the previous misconduct he, Meade, and Leach carried out at the Cabin with the intoxicated handgun exercise where a firearm actually discharged into the floor on a prior occasion." (Doc. No. 44 at ¶ 131.) However, once again, Plaintiff fails to plead any specific allegations that either Wilker, Gillum, or Bogan had any role or responsibility in the decision to hire or retain Develin. Nor does Plaintiff specifically allege that Wilker, Gillum, or Bogan (individually, as opposed to lumped together in a group) had actual or constructive knowledge of Develin's mental health history and/or history of engaging in "intoxicated handgun exercises." In sum, the allegations in the Amended Complaint fail to sufficiently link any of the Individual ONG Defendants to the alleged misconduct underlying Plaintiff's Negligent Retention claim. *See Aaron*, 2014 WL 996471 at * 3; *Niederst*, 2024 WL 3522413 at *5.

Accordingly, Plaintiff's individual capacity claims against the Individual ONG Defendants for Negligent Retention (Count Ten) are dismissed.

### c.  FOIA Claim

The Individual ONG Defendants next argue that Plaintiff's FOIA claim is subject to dismissal because "FOIA applies only to agencies as defined in 5 U.S.C. § 552(f)(1), not individuals." (Doc. No. 115-1 at PageID# 1047.) Citing *Dillard v. Dep't of Treasury*, 87 Fed. Appx. 524, 525 (6th Cir. 2004), the Individual ONG Defendants further assert that "FOIA claims cannot be brought against individual defendants who are not custodians of the requested documents and have final authority for

the agency." (*Id*.)  Plaintiff fails to acknowledge or address this argument in her Brief in Opposition. (Doc. No. 122.)

In light of the above, the Court finds that Plaintiff has waived any opposition to dismissal of her FOIA claim to the extent it is brought against Wilker, Gillum, and Bogan in their individual capacities. *See Humphrey,* 279 Fed. Appx at 331.  Accordingly, Plaintiff's individual capacity claims against the Individual ONG Defendants for violation of FOIA (Count Nine) are dismissed.[31]

## V.    Plaintiff's Motion to Strike Notice of Substitution (Doc. No. 121)

As noted *supra,* on October 24, 2024, the United States filed a "Notice of Substitution" in which it provided notice that "by operation of law, the United States of America is substituted for Defendants [Gillum, Wilker, and Bogan] in their official capacities" because  "[d]uring the time in which the acts and omissions alleged in the Amended Complaint occurred, [Defendants] Gillum, [] Wilker, and [] Bogan were in federal status and acting within the course and scope of their employment with the OHNG."  (Doc. No. 111.)

On February 6, 2025, Plaintiff filed a Motion to Strike the United States' Notice of Substitution, arguing that she "has only brought 42 U.S.C. § 1983 and Ohio state law claims against the ONG Defendants as actors of the State of Ohio."  (Doc. No. 121.)  Therefore, Plaintiff asserts, any substitution must be done in accordance with Fed. R. Civ. P. 25, which limits substitution to situations of (1) death, (2) incompetency, (3) transfer of interest, or (4) death or separation of public officers from office.  (*Id*.) In response, the United States argues that Plaintiff's Motion should be denied both because it is untimely and because "Plaintiff has not met her burden of disproving the

---

[31] To the extent Plaintiff asserts her FOIA claim against Wilker, Gillum, and Bogan in their official capacities, the Court construes these claims as being asserted against the ONG.

United States Attorney's Certification" that Gillum, Wilker, and Bogan "were acting within the course and scope of their employment and duties with the ONG and [in] federal status at the time of the incidents alleged in the Amended Complaint and are deemed to be employees of the United States of America for purposes of 28 U.S.C. § 2679 during the entire time of the incidents alleged in the Amended Complaint."  (Doc. No. 125.)

For the following reasons, Plaintiff's Motion to Strike is denied.  As set forth at length above, the only remaining claim against the ONG Defendants in this action is Plaintiff's claim that she is entitled to attorney's fees and costs under FOIA (Count Nine).  Plaintiff has conceded that her FOIA claim applies only to the ONG itself, and not to any of the Individual ONG Defendants.  Plaintiff has further conceded that the ONG is a federal actor for purposes of her FOIA claim.

Accordingly, as the only remaining claim in this action is against the ONG and it is undisputed that the ONG is a federal actor for purposes of that claim, Plaintiff's Motion to Strike the United States' Notice of Substitution (Doc. No. 121) is denied.  The Court finds that Plaintiff's FOIA claim shall be deemed to be asserted against the United States.  The Clerk is directed to substitute the United States as the party defendant in place of the ONG.

## V.    Conclusion

Accordingly, and for all the reasons set forth this in this Order, the Court finds as follows. Plaintiff's Motion to Supplement (Doc. No. 130) is DENIED.  Defendants Wilker, Gillum, and Bogan's Motion to Dismiss (Doc. No. 115) is GRANTED as follows.  Counts One, Two, Five, Seven, Eight, Nine, and Ten are dismissed as against Defendants Wilker, Gillum, and Bogan in their individual capacities.

Defendant Ohio National Guard's Motion to Dismiss (Doc. No. 116) is GRANTED IN PART and DENIED IN PART, as follows.  Counts One, Two, Five, Seven, Eight, and Ten are dismissed as against Defendant Ohio National Guard and Defendants Wilker, Gillum, and Bogan in their official capacities.[32]  The only remaining claim against Defendant Ohio National Guard is Plaintiff's claim that she is entitled to attorney's fees and costs under FOIA (Count Nine).  By no later than thirty (30) days from the date of this Order, Plaintiff is hereby ordered to submit a Motion for Attorney's Fees and Costs (and any other monetary relief that she may intend to seek in connection with her FOIA claim) that is fully supported by appropriate documentation.  Defendant Ohio National Guard may file a Brief in Opposition within thirty (30) days of the filing of Plaintiff's Motion, and Plaintiff may file a Reply within fourteen (14) days thereafter.

And, lastly, Plaintiff's Motion to Strike the Ohio National Guard's Notice of Substitution (Doc. No. 121) is DENIED. The Court finds that Plaintiff's FOIA claim shall be deemed to be asserted against the United States. The Clerk is directed to substitute the United States as the party defendant in place of Defendant ONG.

**IT IS SO ORDERED.**

Dated:  July 25, 2025                                        *s/Pamela A. Barker*
                                                            PAMELA A. BARKER
                                                            UNITED STATES DISTRICT JUDGE

---

[32] As noted *supra*, the Eleventh Amendment dismissal of Plaintiff's pendent state law claims is properly "with prejudice" to subsequent *federal* court suit, "but it does not by itself preclude a state court suit from raising the same claims." *Experimental Holdings, Inc*., 503 F.3d at 521 (emphasis in original).