## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**Lisa Garrett,**                                                **Case No.   1:23CV2011**
**Individually and as**
**Administrator of the Estate**
**Of Nathan Alexander Garrett**                **JUDGE PAMELA A. BARKER**

        **Plaintiff,**

    **-vs-**

                **MEMORANDUM OPINION & ORDER**

**Morgan County Sheriff's Office,**
**et al.,**

       **Defendants.**


   Currently pending is the Motion of Plaintiff Lisa Garrett, Individually and as Administrator of the Estate of Nathan Alexander Garrett, (hereinafter "Plaintiff") for Attorneys' Fees and Costs relating to her Freedom of Information Act ("FOIA") claim.  (Doc. No. 138.)  Defendant United States of America filed a Brief in Opposition on September 22, 2025, to which Plaintiff replied on October 6, 2025.  (Doc. Nos. 139, 141.)   For the following reasons, Plaintiff's Motion for Attorneys' Fees (Doc. No. 138) is granted in part and denied in part, as set forth herein.

### I.  Relevant Background[1]

### A.  The Pleadings

   This matter arises out of the tragic death of Nathan Alexander Garrett ("Garrett").   In October 2021, Garrett was a member of the Ohio National Guard ("ONG"), 2nd Battalion, 174th Air Artillery

---

[1] The Court has set forth the factual allegations and full procedural history of this matter in several previous Memorandum Opinions & Orders.  *See, e.*g., Doc. Nos. 134, 137.  Familiarity with this Court's previous Opinions is presumed.

Defense Brigade ("AAD") and was present in McConnelsville, Ohio for extended basic training. (Doc. No. 44 at ¶¶ 7, 23, 24.)  On October 20, 2021, Garrett and fellow ONG Guardsmen Cruz Allen, Trance Van Liere, Thomas Develin, James Meade, Christopher Leach, and Jordan Haas (hereinafter referred to collectively as "the Guardsmen Defendants") were "given permission to spend the evening socializing at an off-base residence." (*Id.* at ¶ 26.)  Van Liere's girlfriend, Brenna Nye, also joined them at the off-base residence. (*Id.* at ¶ 28.)  Tragically, at some point during the evening, Garrett was shot and killed during a "disturbing and dangerous variation of "Russian Roulette." (*Id.* at ¶¶ 31-35.)

As relevant to the instant Motion, Plaintiff alleges that the ONG "performed at least one review that included some reference to the shooting death of Nathan Garrett." (*Id.* at ¶ 122.)  The first and more comprehensive of these reviews was allegedly done "by Captain Matthew Jacobs, USA, which was initiated to look into [the] potential infectious influence of radical seditious militia within the Ohio National Guard. Captain Jacob's review included the shooting death of Nathan Garrett." (*Id.*)  Plaintiff claims that the second official review is what is called a "Loss on Duty" ("LOD") determination. (*Id.* at ¶ 123.)  Pursuant to the FOIA, Plaintiff officially submitted requests for production of this information on May 10, 2022, February 19, 2023, and June 6, 2023, but the information was not produced. (*Id.* at ¶¶ 124-126.)

On October 13, 2023, Plaintiff filed a Complaint in this Court against numerous defendants, including (1) the ONG; (2) ONG AAD First Sergeant Jack Gillum; (3) ONG AAD Captain Angela Wilker; (4) ONG AAD Commanding Officer Lawrence Bogan; (5) Guardsmen Defendants Allen,

Van Liere, Develin, Meade, Leach, and Haas; and (6) Nye.[2]  (Doc. No. 1.)  Therein, Plaintiff alleged various state and federal claims arising out of Garrett's death.

On March 6, 2024, Plaintiff was granted leave to file an Amended Complaint.  (Doc. No. 44.) Therein, Plaintiff asserts (among other things) a total of seven state and federal claims[3] against the ONG, Gillum, Wilker, and Bogan (hereinafter "the ONG Defendants"), including a claim for violation of the FOIA.  (*Id*.)  As regards her FOIA claim, Plaintiff demands that the Court "order the immediate production of the unredacted Jacobs [R]eport – at the least (or at least those portions that deal with the shooting death of Nathan Garrett) – as well as the statements completed by the Guardsmen Defendants (and any of the ONG Defendants) on or around October 20-21, 2021."  (*Id*. at ¶ 129.)  Plaintiff also requests that the Court impose a penalty upon the ONG pursuant to 5 U.S.C. § 552 *et seq*. of $100 per day from June 10, 2022 through to the present and for every day into the future that the request remains outstanding and ignored.  (*Id*.)

Plaintiff did not attach copies of her actual FOIA requests to the Amended Complaint.  She did, however, attach a letter dated May 25, 2022 from Janet L. Blain, ONG Chief Warrant Officer and FOIA/Privacy Act Manager, to Plaintiff regarding Plaintiff's first FOIA request.  (Doc. No. 44-1 at PageID# 363.)  Therein, Chief Warrant Officer Blain states that Plaintiff's FOIA request was for "15-6 Investigation in Circumstances Surrounding the Death of SPC Nathan Alexander Garrett. Chief

---

[2] Plaintiff also named the Morgan County Sheriff's Office, the Morgan County Board of County Commissioners, Morgan County Sheriff Douglas McGrath, and Morgan County Deputies Alex Mayle and Thomas Jenkins, Jr., as Defendants. (Doc. No. 1.)

[3] Specifically, Plaintiff asserted the following claims against the ONG Defendants: (1) denial of access under 42 U.S.C. § 1983 (Count One); (2) Violation of Ohio Rev. Code § 2921.32 (Obstructing Justice) (Count Two); (3) Civil Conspiracy under 42 U.S.C. § 1983 (Count Five);(4) Violation of Ohio Rev. Code § 2923.15 (Using Weapons While Intoxicated) (Count Seven); (5) state law Conspiracy (Count Eight); (6) FOIA Violations (Count Nine); and (10) Negligent Retention (Count Ten).  (Doc. No. 44.)

3

of Staff 22-009." (*Id*. at PageID# 363.)  Plaintiff also attaches to her Amended Complaint a letter

dated February 21, 2023 from Chief Warrant Officer Blain to Plaintiff regarding Plaintiff's second

FOIA request.  (*Id.* at PageID# 364).  Therein, Officer Blain states that Plaintiff's second FOIA

request was for "a copy of public records involving the Investigation Report 22-011 by Captain

Matthew Jacobs, U.S. Army, concerning the events involving the death of Ohio National Guardsman

Nathan Garrett on October 20, 2021." (*Id*.)  Lastly, Plaintiff attaches a letter dated June 6, 2023 from

Plaintiff's counsel to Chief Warrant Officer Blain requesting a response to Plaintiff's FOIA requests.

(*Id*. at PageID# 365.)

> **B.      The State Court Action and its Removal to This Court**

Meanwhile, on October 13, 2023 (the same date that Plaintiff filed the instant action in this

Court), Plaintiff filed a Complaint in the Cuyahoga County Court of Common Pleas against Allen,

Van Liere, Develin, Meade, Leach, Haas, Nye, and Meade's grandmother, Betty Jean Greene.[4]  *See*

*Garrett v. Allen, et al*., Cuyahoga County Court of Common Pleas Case No. CV-23-986997.  The

state court Complaint also arises out of the shooting death of Nathan Garrett, and alleges state law

claims for premises liability, civil conspiracy, negligent handling/use/furnishing of a handgun, and

violations of Ohio Rev. Code § 2923.15 (using weapons while intoxicated) and § 2921.32

(obstructing justice).

Plaintiff did not name the ONG as a defendant in the state court case.  However, in November

2023, Plaintiff issued a subpoena in the state court action to the ONG for documents and information

---

[4] Defendant Greene allegedly owns the off-base residence where Mr. Garrett was killed.

4

relating to Garrett's death, including the Jacobs Report. Specifically, in the Subpoena, Plaintiff requested that the ONG produce the following documents:

1.     The complete and unredacted report of Captain Matt Jacobs a portion of which involves the October 20, 2021, shooting of Nathan Garrett.

2.     All statements, complete and unredacted, taken by, given to, or obtained by the Ohio National Guard relating to the shooting death of Nathan Garrett.

3.     All documents and communications, as further defined below,[5] relating to the shooting death of Nathan Alexander Garrett.

(Doc. No. 139-1 at PageID# 1416.) Through counsel, the Department of the Army ("DOA") responded, via letter, that "Department of Defense and Army regulations govern the disclosure of official Ohio National Guard information."  *See Garrett v. Allen, et al.,* Case No. 1:24cv471 (N.D. Ohio) (Ruiz, J.) (Doc. No. 11-2.)  The DOA indicated that Plaintiff's subpoena "does not comply with the relevant regulations" and, therefore, "the Ohio National Guard cannot evaluate your request or honor your subpoena at this time."  (*Id.*)

Plaintiff filed a Motion to Compel, which the state court granted on March 11, 2024.  The United States then removed the state court action to the United States District Court for the Northern District of Ohio, where it was assigned to District Judge David Ruiz.  *See Garrett v. Allen*, Case No. 1:24cv471 (N.D. Ohio) (Ruiz, J.)  Shortly thereafter, Plaintiff filed a Motion to Remand the case back

---

[5] The term "documents" is broadly defined in the Subpoena as follows: "'Documents' shall be construed generally and shall mean any information in tangible form and shall include, without limiting the generality of the foregoing, all letters, telegrams, telexes, teletypes, emails, correspondence, notes to be filed, reports, memoranda, mechanical and electrical recordings, tapes or transcripts, information stored in computers or other data storage or processing equipment translated or translatable into usable form, diary entries, memoranda and notes of conversations (telephonic or otherwise), and of meetings or conferences, studies, reports, interoffice and intra office communications, studies, opinions, photographs, video recordings, and audio recordings."  (*Id.*)  The term "communications" is defined as:  "'Communication' refers to, without limitation, all statements, representations, expressions of facts or opinions, correspondence, reports, memoranda, telegrams, telephone conversations, facsimiles, e-mails, text messages, couriers, U.S. mail, and other transmissions of information, made in any manner and through any medium whatsoever, including, without limitation, oral, written, or electronically generated or stored communications."  (*Id.*)

to state court.  (*Id*. at Doc. No. 6.)  Filing on behalf of the ONG, the United States filed a Motion to Vacate, asking Judge Ruiz to (1) vacate the state court's order granting the motion to compel, and (2) quash the subpoena.  (*Id*. at Doc. No. 11.)  Plaintiff filed a Brief in Opposition to the Motion to Vacate, to which the United States replied.  (*Id.* at Doc. No. 15, 19.)

Later, on May 17, 2024, Defendant Greene filed a Motion to Sever the dispute over Plaintiff's subpoena to the non-party ONG "from the core claims against the Defendants and to remand the core claims against Defendants so they may proceed in the State court from which this action was removed."  (*Id*. at Doc. No. 21.)  The ONG (again, through the United States) filed a Response, indicating that it did not oppose Greene's Motion to Sever.  (*Id*. at Doc. No. 22.)

On June 12, 2024, Judge Ruiz issued an Order (1) finding that removal was proper "only as to the Plaintiff's discovery requests to ONG and the state issued subpoena," and (2) severing and remanding the remainder of the case back to state court.  (*Id*. at Doc. No. 24 at p. 4.)  Subsequently, and after extensive negotiations, the ONG agreed to provide Plaintiff a redacted version of the Jacobs Report.  (*Id*. at Doc. No. 26.)  After further negotiations and the entry of a Stipulated Protective Order, the ONG authorized the release of unredacted copies of the Jacobs Report and certain exhibits thereto, as well as unredacted copies of additional documents including the Report of Lt. Snyder.  (*Id*. at Doc. Nos. 30-35, 40, 41.)

On January 27, 2025, the parties filed a Stipulation of Dismissal, which Judge Ruiz entered the following day.  (Doc. No. 42.)  The Stipulation of Dismissal provides that:

> Lisa Garrett, Individually and as Administrator of the Estate of Nathan Garrett and the Ohio National Guard ("OHNG"), by and through undersigned counsel, hereby stipulate that the parties have resolved their dispute and that this matter may be dismissed under Fed. R. 41(a)(1)(A)(ii), **with each party to bear their own costs and fees.** The parties stipulate that this Court retains jurisdiction to enforce the terms of the protective order entered on December 9, 2024 (ECF No. 41).

6

(*Id.* at Doc. No. 43) (emphasis added).

**C.    Proceedings against the ONG in the instant action**

Meanwhile, the instant case proceeded before the undersigned.  On March 11, 2024, Plaintiff filed returns of service executed by express mail as to the ONG Defendants.  (Doc. Nos. 39, 41, 42, 48.)  Shortly thereafter, the ONG Defendants filed a "Notice of Deficient Service," arguing that "for the purposes of the allegations in the Complaint and Amended Complaint, these defendants are federal actors, and the Plaintiff is required to perfect service upon the United States of America under Fed. R. Civ. P. 4(i)."  (Doc. No. 66 at PageID# 547.)  On March 27, 2024, Plaintiff filed a Response in which she argued that the ONG Defendants were state actors and had been properly served under Ohio law.  (Doc. No. 69.)

On July 10, 2024, the Court issued a Memorandum Opinion & Order in which it evaluated "whether, for purposes of the allegations and claims in Plaintiff's Amended Complaint, the ONG are federal actors and, therefore, required to be served in accordance with Fed. R. Civ. P. 4(i)."  (Doc. No. 97.)  After a lengthy analysis, the Court found, "based on the limited record before it and for purposes of [that] Opinion only, that the ONG Defendants are federal actors with respect to at least some of Plaintiff's claims and, therefore, must be served in accordance with" Rule 4(i).  (*Id.*)  The docket reflects that Plaintiff thereafter proceeded to serve the ONG Defendants pursuant to Rule 4(i). (Doc. No. 113.)

On October 24, 2024, the United States filed a "Notice of Substitution" in which it provided notice that "by operation of law, the United States of America is substituted for Defendants [Gillum, Wilker, and Bogan] in their official capacities."  (Doc. No. 111.)  Several weeks later, on November 22, 2024, Gillum, Wilker, and Bogan filed a Motion to Dismiss all of Plaintiff's state and federal

7

claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. No. 115.)  On that same date, the ONG filed a separate Motion to Dismiss Plaintiff's state and federal claims, also pursuant to Rules12(b)(1) and 12(b)(6).  (Doc. No. 116.)  In response, Plaintiff filed a (1) Motion to Strike the United States' "Notice of Substitution," and (2) a combined Brief in Opposition to the ONG Defendants' Motions to Dismiss.  (Doc. Nos. 121, 122.)  On March 6, 2025, Gillum, Wilker, and Bogan filed a (1) Brief in Opposition to Plaintiff's Motion to Strike, and (2) a Reply Brief in Support of their Motion to Dismiss.  (Doc. Nos. 124, 125.)  On that same date, the ONG filed a Reply Brief in support of its Motion to Dismiss.  (Doc. No. 126.)

Several months later, on July 7, 2025, Plaintiff filed, under seal, a Motion to Supplement her Brief in Opposition to the ONG Defendants' Motion to Dismiss.  (Doc. No. 130.)  Therein, Plaintiff asked the Court to supplement her Brief in Opposition with certain documents that she apparently obtained as a result of her negotiations with the ONG in connection with her motion to compel that was granted in the State Court Action, removed to this Court, and resolved by Judge Ruiz in January 2025.  (*Id*.)  The ONG Defendants did not file a response to Plaintiff's Motion.

On July 25, 2025, this Court issued a Memorandum Opinion & Order regarding the pending Motions. (Doc. No. 134.) The Court denied Plaintiff's Motion to Supplement.  (*Id*.)  The Court then granted the ONG Defendants' Motions to Dismiss Plaintiff's § 1983 claims for Denial of Access and Civil Conspiracy (Counts One and Five); FOIA claim (Count Nine) as against Wilker, Gillum, and Bogan in their individual capacities; and state law claims for Obstruction of Justice, Using Weapons While Intoxicated, Civil Conspiracy, and Negligent Retention (Counts Two, Seven, Eight and Ten). (*Id*.)

Regarding Plaintiff's FOIA claim against the ONG (Count Nine), the Court found that Plaintiff had waived any opposition to the ONG's arguments that (1) the ONG is a federal actor for purposes of Plaintiff's FOIA claim; and (2) Plaintiff has received all the information to which she is entitled under the FOIA.  (*Id*. at PageID# 1315.)  Thus, the Court concluded that the ONG is a federal actor for purposes of Count Nine and that Plaintiff's FOIA claim is moot to the extent she requests the production of certain documents relating to Nathan Garrett's death.  (*Id*. at PageID#s 1315-1316.) However, the Court agreed with Plaintiff that her FOIA claim was not subject to dismissal in light of her request for an award of attorney's fees and costs pursuant to 5 U.S.C. § 552.  (*Id*.)  The Court ordered Plaintiff to submit a Motion for Attorney's Fees and Costs (and any other monetary relief that she intended to seek in connection with her FOIA claim) that is fully supported by appropriate documentation.  (*Id*. at PageID# 1316.)

Plaintiff filed her Motion for Attorneys' Fees and Costs on August 22, 2025.  (Doc. No. 138.) The United States filed a Brief in Opposition on September 22, 2025, to which Plaintiff replied on October 6, 2025.  (Doc. Nos. 139, 141.)

## II.    Legal Standard

Section 552(a)(4)(E)(i) of the FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  To determine whether fees and costs should be granted under this provision, the Sixth Circuit directs district courts to apply a two-part test.  *GMRI, Inc. v. EEOC*, 149 F.3d 449, 451 (6th Cir. 1998).  *See also Weikamp v. United States Department of Navy*, 175 F.Supp.3d 830, 834 (N.D. Ohio 2016);

9

*Lawrence v. United States Small Business Administration,* 2021 WL 4398328 at * 7 (E.D. Mich. Sept. 27, 2021).

Courts first "decide whether the plaintiff 'substantially prevailed' and is thus eligible for such an award." *GMRI, Inc.,* 149 F.3d at 451 (citing *Maynard v. CIA*, 986 F.2d 547, 568 (1st Cir. 1993)). The FOIA provides that "a complainant has substantially prevailed if the complainant has obtained relief through either -- (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). If the plaintiff is eligible for an award, courts "then determine whether the plaintiff is entitled to such an award based upon a balancing of equitable considerations." *GMRI*, 149 F.3d at 451. *See also Weikamp*, 175 F.Supp.3d at 834); *Lawrence,* 2021 WL 4398328 at * 7. These equitable considerations include "[1] the benefit to the public deriving from the case; [2] the commercial benefit to the complainant and the nature of its interest in the records; and [3] whether the agency's withholding [of the records] had a reasonable basis in law." *GMRI,* 149 F.3d at 452 (citation omitted). *See Weikamp*, 175 F.Supp.3d at 835; *Lawrence,* 2021 WL 4398328 at * 9. This determination "rests within the sound discretion of the district court." *Id*.

## III.    Analysis

In her Motion, Plaintiff argues that she is entitled to attorney's fees and costs in the total amount of $29,453.00[6] pursuant to 5 U.S.C. § 552(a)(4)(E). (Doc. No. 138.) Plaintiff argues that

---

[6] Plaintiff calculates the total amount of her request for attorneys' fees and costs to be $28,429.50, ostensibly by adding together the entries in the Billing Chart attached to her Motion. (Doc. No. 138 at PageID#s 1371, 1381.) Several of the dollar amounts associated with entries on this Chart are difficult to decipher because they are covered by text. *See, e.g. id*. at PageID#s 1373, 1380. However, by this Court's calculation, the sum total of each of the entries on Plaintiff's Billing Chart is actually $29,453.00—and not $28,429.50.

10

she has substantially prevailed on her FOIA claim because, after years of refusing to produce the requested documents, "the ONG ultimately changed its position on the matter and disclosed the unredacted documents," including an unredacted copy of the Jacobs Report. (*Id.* at PageID# 1370.) Plaintiff further asserts that "each factor that this Court may review in determining whether [she] is entitled to attorneys' fees relating to the FOIA claim overwhelmingly favors Plaintiff." (*Id.*) In support of her request, Plaintiff attaches as an Exhibit to her Motion a chart entitled "Garrett-FOIA Attorneys' Fees Itemization," which lists one hundred and thirty-nine (139) separate billing entries from February 2, 2023 through July 7, 2025 (hereinafter referred to as "Plaintiff's Billing Chart").[7] (Doc. No. 138 at PageID#s 1373-1381.)

Lastly, Plaintiff maintains that she recently discovered through discovery in the ongoing state court case that Defendant Brenna Nye gave a statement to the ONG on the night of the incident. (*Id.* at PageID#s 1370-1371) (citing Doc. No. 138 at PageID# 1394.) Plaintiff asserts that the ONG has never produced a copy of Nye's statement and thus it is now "clear that ONG has not fully complied with Plaintiff's FOIA request." (*Id.* at PageID# 1371.) Plaintiff therefore asks that the Court (1) reconsider its July 25, 2025 Opinion to the extent it found that Plaintiff's FOIA claim was moot, and (2) "issue an Order requiring the ONG to release Ms. Nye's statement as well as any other documents that may not have been disclosed that were subject to Plaintiff's FOIA claim." (*Id.*)

---

[7] Plaintiff's chart identifies three "billers," who are identified solely by the initials "JRL," "CRE," and "BNT." Plaintiff does not identify who these "billers" are by their full names. As best this Court can gather, "JRL" refers to Attorney John R. Liber, and "CRE" refers to Attorney Christopher R. Elko (who withdrew on October 9, 2025). The Court is not aware to whom the initials "BNT" refer. Plaintiff also fails, at any point in her Motion or its attachments, to provide the hourly rate(s) for any of these "billers." Although not entirely clear, it appears from this Court's review of the chart that (1) JRL's (i.e., Attorney Liber's) hourly rate is $445.00; (2) CRL's (i.e., Attorney Elko's) hourly rate is $200.00; and (3) BNT's hourly rate is $95.00. *See, e.g.,* Doc. No. 138 at PageID#s 1374, 1375, 1378. Plaintiff fails to provide any explanation regarding why she believes any of these hourly rates are reasonable.

11

In response, the United States argues that Plaintiff is not eligible for "most of" the attorneys' fees she requested because they are either for matters outside her FOIA claim, matters in which she did not substantially prevail, or for time spent reviewing documents once she received them.  (Doc. No. 139 at PageID# 1409.)  Moreover, the United States argues that "the entries were for the Judge Ruiz case and/or the state court case, which the parties voluntarily dismissed and agreed to bear their own fees and costs."  (*Id*.)  The United States maintains that Plaintiff is not entitled to fees for such activities under the FOIA.  (*Id*.)  Regarding Plaintiff's arguments with respect to Defendant Nye, the United States argues that this Court should not reopen Plaintiff's FOIA claim because "[n]owhere in her Amended Complaint does [Plaintiff] allege [that] she sought, under FOIA, statements by a civilian named Brenna Nye."  (*Id*. at PageID# 1411.)  Lastly, the United States asserts that "ONG is not currently in possession of a statement by Brenna Nye and cannot provide it to Plaintiff."  (*Id*.)

The Court first considers whether Plaintiff is eligible to recover the requested attorneys' fees under the first part of the Sixth Circuit's two-part test.  For the reasons set forth below, the Court finds that Plaintiff is eligible for some (but not all) of her requested attorneys' fees and costs.

**A.      Eligibility**

As noted above, in evaluating requests for attorneys' fees under the FOIA, courts must first "decide whether the plaintiff 'substantially prevailed' and is thus eligible for such an award." *GMRI, Inc.,* 149 F.3d at 451. The FOIA provides that "a complainant has substantially prevailed if the complainant has obtained relief through either -- (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).  A plaintiff is deemed "eligible" to recover fees under this statute by satisfying either provision. *Lawrence,* 2021 WL 4398328 at * 7.

Here, Plaintiff relies on the second of these provisions, i.e., a voluntary or unilateral change in position by the agency. This second basis for fees is often referred to as the "catalyst" provision. *See, e.g. Environmental and Policy Institute v. Tennessee Valley Authority*, 2025 WL 410075 at * 1 (E.D. Tenn. Feb. 5, 2025). Under this provision, the key question is whether "prosecution of the action could reasonably be regarded as necessary to obtain the information and [whether] the action had a substantive causative effect on the delivery of the information." *Batton v. I.R.S.*, 718 F.3d 522, 525 (5th Cir. 2013). *See also GMRI, Inc.*, 149 F.3d at 451 (finding that, even if a FOIA plaintiff "did not obtain a court order compelling the agency to produce requested documents, it still will have substantially prevailed if it demonstrates that the prosecution of the lawsuit was reasonably necessary to obtain requested information, and that the existence of the lawsuit had a causative effect upon the release of that information.");[8] *Torp v. United States Office of Management and Budget*, 2025 WL 2176753 at * 4 (W.D. Mich. June 30, 2025) ("A plaintiff substantially prevails by showing that the

___

[8] The Court notes that neither party cites nor discusses the Sixth Circuit's opinion in *GMRI, Inc., supra*. In that case, the Sixth Circuit recognized this so-called catalyst theory of recovery based on its interpretation of an earlier version of § 552(a)(4)(E). *GMRI, Inc.*, 149 F.3d at 451-452. After the Sixth Circuit's decision in *GMRI, Inc.*, the Supreme Court held that the catalyst theory is not a permissible basis for the award of attorney fees under a comparable fee-shifting provision contained in the Fair Housing Amendments Act and the Americans with Disabilities Act. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 610 (2001). Congress responded to the Supreme Court's decision by amending the FOIA in 2007 to expressly include the catalyst theory provision, which "abrogated the rule of *Buckhannon* in the FOIA context and revived the possibility of fee awards in the absence of a court decree." *Lawrence*, 2021 WL 4398328 at * 7 (quoting *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011)). "Seven other United States Courts of Appeals have held that the 2007 FOIA amendment 'simply reinstated the pre-*Buckhannon* catalyst theory of recovery.'" *Environmental & Policy Institute,* 2025 WL 410075 at * 2 (quoting *First Amend. Coal. v. U.S. Dep't of Just.*, 878 F.3d 1119, 1128 (9th Cir. 2017)(collecting cases)). However, there have been some areas of disagreement. Specifically, "[s]ome courts have read the 2007 amendment to incorporate a 'catalyst theory' under which, to substantially prevail in the absence of a favorable judgment, a party must show that the litigation 'substantially caused' the government to voluntarily or unilaterally change its position." *Lawrence*, 2021 WL 4398328 at * 8 (collecting cases). "[Other] courts have questioned whether a causal nexus between the litigation and the agency's subsequent release of requested records is required given the text of the statute." *Id.* (collecting cases). As of the date of this Opinion, the Sixth Circuit has not yet directly addressed this issue. *Id.* Here, the parties have not raised (or even acknowledged) this issue. However, the Court need not address it because, even applying the stricter theory of causation applied by some courts to the catalyst theory of recovery, the Court finds that Plaintiff has substantially prevailed with respect to some of her requested attorneys' fees, as set forth herein.

lawsuit was necessary to compel the agency to produce the requested documents."), *report and recommendation adopted by* 2025 WL 2172535 (W.D. Mich. July 31, 2025).

In her Motion, Plaintiff maintains that she substantially prevailed on her FOIA claim because it was only after years of litigation that "[t]he ONG ultimately changed its position on the matter and disclosed the unredacted documents." (Doc. No. 138 at PageID# 1370; Doc. No. 141 at PageID# 1440.) In response, the United States argues generally that Plaintiff is not eligible for "most of" the attorneys' fees she requested because "most of" her billing entries are for (1) matters that are not related to her FOIA claim; (2) time spent reviewing documents produced by the ONG; and/or (3) specific motions or filings regarding which she did not prevail. (Doc. No. 139.)

The Court will address each of the United States's arguments, separately below.

### 1.    Fees Related to the State Court Case and Judge Ruiz's Case

The United States first argues that Plaintiff is not entitled to recover any attorneys' fees or costs that are "unrelated to [her] FOIA claim" in this lawsuit. (Doc. No. 139 at PageID#s 1409-1410.) Specifically, the United States maintains that any actions taken by Plaintiff to obtain ONG documents outside of the instant lawsuit (i.e., as part of Plaintiff's state court lawsuit prior to removal, and/or Judge Ruiz's case post-removal) "were separate and apart from her FOIA request." (*Id.*) The United States argues that due to Plaintiff's "additional requests" in the state court case and Judge Ruiz's case, "Plaintiff received sensitive documents that are not public record—[i.e.] records she would not have received under FOIA." (*Id.*) The United States asserts that Plaintiff is not entitled to attorneys' fees under FOIA for these "additional actions," including any fees relating to issuance of the subpoena, the state court motion to compel, Plaintiff's opposition to the motion to vacate, the status reports in Judge Ruiz's case, etc. (*Id.*)

14

In addition, the United States emphasizes that the parties entered into a Stipulated Dismissal in Judge Ruiz's case which expressly provides that each party agrees to bear its own costs and fees. (*Id*.)  Thus, the United States argues that the Court should not award Plaintiff attorneys' fees for the billing entries regarding the subpoena, Plaintiff's correspondence with the DOA, motion to compel, opposition to the motion to vacate, stipulated protective order, and/or status reports in Judge Ruiz's case.  (*Id*.)  The United States then attaches as an Exhibit to its Brief in Opposition an annotated copy of Plaintiff's Billing Chart, in which it assigns a number to each of the 139 billing entries on that Chart.  (Doc. No. 139-5.)  The United States maintains that Billing Chart Entry Nos. 8-34, 40, 42, 46-57, 60-61, 63, 74, 76, 82-85, 95-98, 101-102, 104-115, 117-124, 126, and 128 fall within this category and that Plaintiff is not entitled to recover for any of the fees and costs reflected in these entries. (Doc. No. 139 at PageID# 1410.)

In her Reply Brief, Plaintiff argues generally that "had the ONG complied with Plaintiff's FOIA requests, there would have been no need for Plaintiff to issue the Subpoena for the exact same information, file a motion to compel, and ultimately litigate this matter for nearly two years."  (Doc. No. 141.)  Notably, however, Plaintiff does not acknowledge or address the United States' argument that she is not entitled to recover for any attorneys' fees and costs associated with the state court case and Judge Ruiz's case, in light of the parties' agreement in the Stipulated Dismissal Order that each party would bear its own costs and fees.  *See Garrett v. Allen, et al*., Case No. 1:24CV00471 (N.D. Ohio) (Ruiz, J.) (Doc. No. 43.)  Plaintiff also does not dispute the United States' assertion that Billing Chart Entry Nos. 8-34, 40, 42, 46-57, 60-61, 63, 74, 76, 82-85, 95-98, 101-102, 104-115, 117-124, 126, and 128 (as numbered in Doc. No. 139-5) fall within the category of time entries that are attributable to either the state court case and/or Judge Ruiz's case. Lastly, Plaintiff does not

15

acknowledge or address the United States' argument that, through her subpoena, Plaintiff sought and obtained a broader universe of documents that she did not request (and were not recoverable) under the FOIA.

It is well established that, if a party fails to address an argument raised in a motion or brief in opposition, a district court may deem that party to have waived opposition to that argument.  *See Federal National Mortgage Ass'n v. River Houze, LLC*, 596 F.Supp.3d 925, 932 (E.D. Mich. 2022) ("While the failure to respond to an argument is more commonly seen in response to a motion to dismiss, it is well settled in this District that such failure can constitute concession of the un-addressed argument."); *Degolia v. Kenton Cty.,* 381 F.Supp.3d 740, 759–60 (E.D. Ky. 2019) ("[I]t is well understood ... that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (quoting *Rouse v. Caruso*, 2011 WL 918327 at *18 (E.D. Mich. Feb. 18, 2011)) (internal quotation marks omitted)); *Albury v. Strategic Staffing Solutions*, 2025 WL 2552164 at * 3 (E.D. Mich. Sept. 4, 2025) (noting that "failure to address an argument serves as a waiver of challenging that argument.").  *See also Notredan, L.L.C. v. Old Republic Exch. Facilitator Co*., 531 Fed. Appx 567, 569 (6th Cir. 2013) (explaining that failure to respond to an argument that a claim is subject to dismissal "amounts to a forfeiture of [that] claim").

Here, Plaintiff had every opportunity to respond to the United States' arguments (set forth *supra*) that she is barred from recovering attorneys' fees and costs relating to the state court case and Judge Ruiz's case.  Plaintiffs failed to do so.  The Court, therefore, deems Plaintiff to have waived any opposition with respect to these issues.  Moreover, even if the Court were to overlook Plaintiff's

waiver and address the United States' arguments on the merits, the Court would agree with the United States in all respects.

First, it is undisputed that, after the United States produced certain documents in response to Plaintiff's subpoena issued in the state court case, the parties jointly filed a Proposed Stipulation of Dismissal in which they expressly agreed that "this matter may be dismissed under Fed. R. Civ. P. 41(a)(1)(A)(ii), with each party to bear their own costs and fees." *Garrett v. Allen, et al.,* Case No. 1:24cv471 (N.D. Ohio) (Ruiz, J.) (Doc. No. 42.)  Notably, Plaintiff knowingly and expressly agreed to bear her own costs and fees, despite the fact that her FOIA claim remained pending before this Court.  Under these circumstances, the Court is not persuaded that Plaintiff should nonetheless be permitted to recover attorneys' fees and costs that she incurred in either the state court case and/or Judge Ruiz's case.

The Court further finds that Plaintiff is not entitled to recover these attorneys' fees and costs for the additional reason that the subpoena issued by Plaintiff to the ONG in the state court case appears to be much broader in scope than Plaintiff's FOIA requests herein.  Specifically, Plaintiff does not dispute (in either her Motion or Reply Brief) that her FOIA requests were focused on obtaining the Jacobs Report.[9]  By contrast, Plaintiff's subpoena to the ONG sought not only "[t]he complete and unredacted report of Captain Matt Jacobs," but also "*[a]ll* statements, complete and unredacted, taken by, given to, or obtained by the Ohio National Guard relating to the shooting death

---

[9] As noted *supra*, the Court does not have copies of Plaintiff's actual FOIA requests.  However, Chief Officer Blain's responses to Plaintiff's FOIA requests identify the documents that Plaintiff requested under FOIA.  Specifically, in her May 25, 2022 letter, Chief Warrant Officer Blain states that Plaintiff's FOIA request was for "15-6 Investigation in Circumstances Surrounding the Death of SPC Nathan Alexander Garrett. Chief of Staff 22-009."  (Doc. No. 44-1 at PageID# 363.)  In her February 21, 2023 letter, Officer Blain states that Plaintiff's second FOIA request was for "a copy of public records involving the Investigation Report 22-011 by Captain Matthew Jacobs, U.S. Army, concerning the events involving the death of Ohio National Guardsman Nathan Garrett on October 20, 2021."  (*Id.* at PageID# 364.)

17

of Nathan Garrett" as well as "*all documents and communications* ... relating to the shooting death of" Nathan Garrett.  (Doc. No. 139-1) (emphasis added).  *See also* Doc. No. 138 at PageID# 1384. Unlike the FOIA requests, then, Plaintiff's subpoena is not limited to Captain Jacobs' Report and, instead, broadly seeks any and all documents and communications relating to Garrett's death, including any and all statements "taken by, given to, or obtained by" the ONG.

By failing to acknowledge or address this disparity in the breadth of the subpoena versus the FOIA requests, Plaintiff has not provided any basis for the Court to even attempt to parse out which attorneys' fees incurred in the state court case and/or Judge Ruiz's case are arguably attributable to obtaining the Jacobs Report (which falls within Plaintiff's FOIA requests), as opposed to attorneys' fees incurred in the state court case and/or Judge Ruiz's case that are arguably attributable to obtaining the broader universe of documents sought and obtained via the subpoena.  Thus, even if she had not fully waived the issue, the Court finds that Plaintiff has failed to provide sufficient information for the Court to assess an appropriate award of fees or costs for actions taken in either the state court case or Judge Ruiz's case, i.e., an award that is appropriately limited to the documents actually sought and obtained by Plaintiff under FOIA.

Accordingly, and in the absence of any meaningful opposition, the Court finds that Plaintiff may not recover the fees and costs set forth in Billing Chart Entry Nos. 8-34, 40, 42, 46-57, 60-61, 63, 74, 76, 82-85, 95-98, 101-102, 104-115, 117-124, 126, and 128 (as numbered in Doc. No. 139-5.)  By this Court's calculation, these Entries amount to a total of $16, 203.00, which shall be deducted from Plaintiff's request for attorneys' fees and costs.

### 2.  Fees Related to Post-Relief Activity

The United States next asserts that Plaintiff improperly seeks attorneys' fees for time spent "coordinating logistics of the document production and [for] reviewing the requested documents once she received them." (Doc. No. 139 at PageID# 1410-1411.)  Citing authority from the District Court for the District of Columbia, the United States asserts that Plaintiff cannot recover for these fees under FOIA because it is considered "post-relief activity."  (*Id*.) (citing *American Immigration Council v. United States Dep't of Homeland Security*, 82 F.Supp.3d 396 (D.D.C. 2015)).  The United States maintains that Billing Chart Entry Nos. 58-59, 65-66, 71-73, 75, 77-79, 87-94, 99-100, 125, 127, and 129-132, fall within this category and that Plaintiff is not entitled to recover for any of the fees and costs reflected in these entries.  (Doc. No. 139 at PageID# 1411.)  Plaintiff fails to acknowledge or address this issue in her Reply Brief.

As noted above, where a party fails to address an argument raised in a motion or brief in opposition, a district court may deem that party to have waived opposition to that argument.  *See Federal National Mortgage Ass'n v*, 596 F.Supp.3d at 932; *Degolia,* 381 F.Supp.3d at 759–60; *Albury*, 2025 WL 2552164 at * 3; *Notredan, L.L.C.*, 531 Fed. Appx at 569.  Here, Plaintiff had every opportunity to respond to the United States' argument that she is barred from recovering attorneys' fees and costs relating to post-relief activity, such as reviewing the documents produced by the ONG.  Plaintiffs failed to do so.  The Court, therefore, deems Plaintiff to have waived any opposition with respect to this issue.

Accordingly, and in the absence of any meaningful opposition on this issue, the Court finds that Plaintiff may not recover the fees and costs set forth in Billing Chart Entry Nos. 58-59, 65-66,

19

71-73, 75, 77-79, 87-94, 99-100, 125, 127, and 129-132[10] (as numbered in Doc. No. 139-5.)  By this Court's calculation, these Entries amount to a total of $5,657.50, which shall be further deducted from Plaintiff's request for attorneys' fees and costs.

### 3.    Fees relating to Matters regarding which Plaintiff did not Prevail

The United States next argues that Plaintiff is not entitled to recover attorneys' fees relating to (1) the United States' Notice of Removal in Judge Ruiz's case; and/or (2) Plaintiff's Motion to Supplement (Doc. No. 128, 130), which Plaintiff filed in support of its Brief in Opposition to the ONG Defendants' Motion to Dismiss.  (Doc. No. 139 at PageID# 1410.)  The United States asserts that Plaintiff did not prevail with respect to either of these filings and, therefore, she is not entitled to recover any fees relating thereto.  (*Id.*)  The United States maintains that Billing Chart Entry Nos. 35-39, 41, 43-45, 62, 67-69, 103, 133-139 fall within this category.  (*Id.*)

In response, Plaintiff argues that the United States' argument is without merit because it "attempting to split hairs and, in some cases,[is] just outright incorrect."  (Doc. No. 141 at PageID# 1442.)  As an example, Plaintiff notes that, on June 12, 2024, Judge Ruiz in fact granted, in part, Plaintiff's Motion for Remand.  (*Id.*) Thus, Plaintiff maintains that she "satisfies the eligibility criteria to receive reimbursement of her attorneys' fees."  (*Id.*)

The Court finds as follows.  Regarding Plaintiff's request for attorneys' fees relating to the United States' Notice of Removal in Judge Ruiz's case, the Court denies this request on the grounds that (as discussed at length *supra*) Plaintiff expressly agreed to bear her own costs and fees when she

---

[10] The Court also notes that the several of these billing entries reflect communications with counsel for the United States in Judge Ruiz's case (*see, e.g.*, Billing Entry Nos. 87, 91, 93) and others reflect review of and/or actions relating to the Snyder Report and other documents separate and apart from the Jacobs Report (*see, e.g.*, Billing Entry Nos. 87, 88, 89, 90, 91, 92, 94, 100, 132.) The Court finds that Plaintiff is not entitled to recover attorneys' fees for such entries for the reasons set forth *supra* in Section III.A.1 of this Opinion.

stipulated to the dismissal of Judge Ruiz's case on January 28, 2025. Thus, the Court finds that Plaintiff is not entitled to recover fees relating to the United States' Notice of Removal, including time spent by counsel reviewing, researching, and discussing the Notice of Removal; drafting and researching Plaintiff's Motion to Remand; and communicating with court staff regarding "remand requirements." (Doc. No. 139-1 at PageID#s 1427-1428.) This includes Billing Chart Entry Nos. 35, 36, 37, 38, 39, 41, 43, 44, 45, 62, 67, 68 and 69. By this Court's calculation, these Entries amount to a total of $4,069.00, which shall be further deducted from Plaintiff's request for attorneys' fees and costs.

The Court also denies Plaintiff's request for attorney fees relating to the Motion to Supplement that she filed in the instant case. As noted *supra,* on July 7, 2025, Plaintiff filed, under seal, a Motion to Supplement her Brief in Opposition to the ONG Defendants' Motion to Dismiss. (Doc. No. 130.) Therein, Plaintiff asked the Court to supplement her Brief with certain documents that she apparently obtained as a result of her negotiations with the ONG in connection with her subpoena. (*Id*.) Plaintiff maintained that these documents were relevant to the ONG Defendants' argument that Plaintiff's claims against them should be dismissed under Rule 12(b)(6) because Plaintiff failed to allege any specific facts regarding Defendants Wilker, Gillum, and/or Bogan. (*Id*.) On July 25, 2025, this Court denied Plaintiff's Motion to Supplement on the grounds that (1) it was untimely, and (2) the documents identified in Plaintiff's Motion constituted evidentiary materials outside the pleadings that were not properly considered in the context of a Rule 12(b)(6) motion to dismiss. (Doc. No. 134 at PageID#s 1299-1302.)

Plaintiff is not entitled to attorneys' fees incurred in relation to her Motion to Supplement for several reasons. As an initial matter, Plaintiff fails to acknowledge, address, or otherwise respond to

the United States' argument that she is not entitled to fees relating to this Motion because the Court denied the Motion and, thus, Plaintiff did not "substantially prevail" for purposes of these fees.  Thus, Plaintiff has waived the issue. *See Federal National Mortgage Ass'n v*, 596 F.Supp.3d at 932; *Degolia,* 381 F.Supp.3d at 759–60; *Albury*, 2025 WL 2552164 at * 3; *Notredan, L.L.C.*, 531 Fed. Appx at 569.

Moreover, even considering the issue on the merits, the Court finds that any attorneys' fees that Plaintiff incurred relating to her Motion to Supplement are not recoverable because they are not related to her FOIA claim.  While Plaintiff sought to supplement the record with documents she obtained from the ONG in response to her subpoena, the Motion itself was not in any way related to her FOIA claim in this action.  Rather, Plaintiff filed the Motion in order to bolster her argument that she had alleged sufficient facts to survive dismissal under Rule 12(b)(6) with respect to her § 1983 and state law claims against the individual ONG Defendants. Thus, and for all the reasons set forth above, the Court finds that Plaintiff is not entitled to recover under § 552(a)(4)(E) for time spent relating to her Motion to Supplement.  This includes Billing Chart Entry Nos. 133-139.  By this Court's calculation, these Entries amount to a total of $1,411.50, which shall be further deducted from Plaintiff's request for attorneys' fees and costs.

Lastly, the Court notes that the United States indicates that Billing Chart Entry No. 103 reflects fees incurred relating to the Notice of Removal and/or Plaintiffs' Motion to Supplement.  In fact, Billing Chart Entry No. 103 reflects $267.00 in attorneys' fees relating to Plaintiffs' brief in opposition to the ONG's Motion to Vacate the subpoena, which was filed in Judge Ruiz's case.  The Court finds that Plaintiff may not recover for these fees in light of the parties' agreement to bear their

own costs and fees in the Stipulated Dismissal Order entered in Judge Ruiz's case.   Thus, the Court will further deduct $267.00 from Plaintiff's request for attorneys' fees and costs.

### 4.        Remaining Fees

In sum, the total amount of attorneys' fees that this Court will deduct from Plaintiff's fee request is $27,608.00 (i.e., $16,203 for the reasons set forth in Section III.A.1 of this Opinion + $5,657.50 for the reasons set forth in Section III.A.2 of this Opinion + a total of $5,747.50 for the reasons set forth in Section III.A.3 of this Opinion.)  After deduction of these fees, there are a total of twelve (12) remaining billing entries for which Plaintiff seeks an award of fees, i.e., Billing Chart Entry Nos. 1, 2, 3, 4, 5, 7, 64, 70, 80, 81, 86, and 116.[11]  By this Court's calculation, the total sum of these entries is $1,675.00.

As noted above, Plaintiff argues that she is eligible for an award of attorneys' fees for the time reflected in the above entries.  She maintains that she substantially prevailed with respect to these fees because she obtained relief through "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).  The United States does not dispute that Plaintiff is eligible for attorneys' fees for the time reflected in these twelve (12) specific entries.

Accordingly, the Court finds that Plaintiff is eligible to recover an award of attorneys' fees for the time reflected in Billing Chart Entry Nos. 1, 2, 3, 4, 5, 7, 64, 70, 80, 81, 86, and 116. Specifically, and in the absence of any opposition from the United States with respect to these

---

[11] There are actually thirteen (13) remaining entries, i.e., Billing Chart Entry Nos. 1, 2, 3, 4, 5, 6, 7, 64, 70, 80, 81, 86, and 116.  The sum total of the attorneys' fees sought in these thirteen entries is $1,845.00.  However, the United States argues (and Plaintiff does not dispute) that Billing Chart Entry Nos. 5 and 6 (each in the amount of $170.00) are duplicative.  Thus, the Court will only count one of these entries, and will deduct $170.00 from the total sum of $1,845.00, for a revised total of $1,675.00.

particular billing entries, the Court concludes that Plaintiff has sufficiently demonstrated that prosecution of the instant action was necessary in order for her to obtain the documents she requested under FOIA and that the instant action had a "causative effect" on the delivery of those documents. *See GMRI, Inc*., 149 F.3d at 451; *Batton*, 718 F.3d as 525.

### B. Entitlement

After determining eligibility, courts determine whether the plaintiff is entitled to an award based upon a balancing of equitable considerations." *GMRI*, 149 F.3d at 451 (citing *Maynard*, 986 F.2d at 568). *See also Weikamp*, 175 F.Supp.3d at 834; *Lawrence,* 2021 WL 4398328 at * 7. These equitable considerations include "[1] the benefit to the public deriving from the case; [2] the commercial benefit to the complainant and the nature of its interest in the records; and [3] whether the agency's withholding [of the records] had a reasonable basis in law." *GMRI,* 149 F.3d at 452 (citation omitted). *See Weikamp*, 175 F.Supp.3d at 835; *Lawrence,* 2021 WL 4398328 at * 9. This determination "rests within the sound discretion of the district court." *Id*.

In her Motion, Plaintiff argues that each of the three equitable considerations set forth above "overwhelmingly" weigh in her favor. (Doc. No. 138 at PageID# 1370.) Specifically, Plaintiff argues that her "interest in the records that the ONG refused to disclose was of the highest magnitude—the interest of a mother seeking closure as to her son's death." (*Id*. at PageID# 1369.) Plaintiff next asserts that "there is no argument that the public would be better served by allowing an agency to withhold records of this nature." (*Id*.) Lastly, as to the third consideration, Plaintiff notes that the ONG has not set forth a reasonable explanation as to why they withheld the records." (*Id.*) In its Brief in Opposition, the United States fails to acknowledge or address any of the equitable considerations set forth above. (Doc. No. 139.) Nor does the United States otherwise offer any

24

response or opposition to Plaintiff's arguments that each of the three equitable considerations set forth above weigh strongly in her favor. (*Id.*)

As has been noted several times in this Opinion, where a party fails to address an argument raised in a motion or brief in opposition, a district court may deem that party to have waived opposition to that argument. *See Federal National Mortgage Ass'n v*, 596 F.Supp.3d at 932; *Degolia*, 381 F.Supp.3d at 759–60; *Albury*, 2025 WL 2552164 at * 3; *Notredan, L.L.C.*, 531 Fed. Appx at 569. Here, the United States had every opportunity to respond to Plaintiff's argument that she is entitled to an award of fees with respect to the time reflected in Billing Chart Entry Nos. 1, 2, 3, 4, 5, 7, 64, 70, 80, 81, 86, and 116. Yet the United States failed to do so. The Court, therefore, deems the United States to have waived any opposition with respect to this issue.[12]

Accordingly, and in the absence of any meaningful opposition, the Court finds that Plaintiff is entitled to an award attorneys' fees for the time reflected in Billing Chart Entry Nos. 1, 2, 3, 4, 5, 7, 64, 70, 80, 81, 86, and 116.

### C.     Reasonableness of Fees

Having determined that Plaintiff is eligible for and entitled to an award of attorneys' fees for the time reflected in Billing Chart Entry Nos. 1, 2, 3, 4, 5, 7, 64, 70, 80, 81, 86, and 116, the Court next considers the reasonableness of the fees requested. The total sum of attorneys' fees set forth in these entries is $1,675.00.

---

[12] In light of the United States' waiver, the Court need not (and will not) address each of the equitable considerations set forth in *GMRI, Inc*. However, the Court does note that the United States has never articulated any reasonable basis in law for its prolonged withholding of the documents requested by Plaintiff in her three FOIA requests. *See Weikamp*, 175 F.Supp.3d at 837 ("Although none of the factors should be given dispositive weight, it is proper to award attorney fees if the government's withholding of records 'had no reasonable basis in law.'") (quoting *Am. Commercial Barge Lines Co. v. NLRB*, 758 F.2d 1109, 1111 (6th Cir. 1985)).

As one district court in this Circuit recently explained when evaluating the reasonableness of a request for attorneys' fees under the FOIA:

> Courts strive to fashion reasonable fee awards that are "adequately compensatory to attract competent counsel yet...avoid[ ] producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts have discretion to adjust this "lodestar" calculation based on the particular facts of the case and the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974). *Adcock-Ladd*, 227 F.3d at 349. [footnote omitted]. However, the most significant factor guiding a court's analysis of the reasonableness of fees claimed is "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. The party seeking an award of fees bears the burden of submitting sufficiently detailed evidence supporting the hours worked and the rates claimed. *Id.* at 433.

*Michigan Immigrant Rights Center*, 2021 WL 855468 at * 7 (E.D. Mich. March 8, 2021).

Here, neither party addresses the reasonableness of Plaintiff's requested attorneys' fees. As noted *supra,* the Billing Chart attached to Plaintiff's Motions lists three "billers," who are identified solely by the initials "JRL," "CRE," and "BNT."  (Doc. No. 138 at PageID#s 1373-1381.)  Plaintiff does not identify who these "billers" are by their full names, but it appears that "JRL" refers to Attorney John R. Liber and "CRE" refers to Attorney Christopher R. Elko (who withdrew on October 9, 2025).  The Court does not know to whom the initials "BNT" refer.  Plaintiff also fails, at any point in her Motion or its attachments, to provide the hourly rate(s) for any of these "billers."[13]  The total amount of hours reflected in Billing Chart Entry Nos. 1, 2, 3, 4, 5, 7, 64, 70, 80, 81, 86, and 116 is 5.20 hours.  Of this, "JRL" billed for 3.20 hours and "CRE" billed for 2.0 hours.  Plaintiff fails to

---

[13] It is not clear (and it appears that JRL's rate may have fluctuated over time) but, based on its own review of the Billing Chart, it appears that (1) JRL's (i.e., Attorney Liber's) hourly rate is $445.00; (2) CRL's (i.e., Attorney Elko's) hourly rate is $200.00; and (3) BNT's hourly rate is $95.00. *See, e.g.*, Doc. No. 138 at PageID#s 1374, 1375, 1378.

provide any argument or explanation regarding the reasonableness of either the number of hours requested or the hourly rates of "JRL" and "CRE."  Likewise, the United States also fails, entirely, to acknowledge or address the reasonableness of Plaintiff's fee request.

In sum, the parties' briefing on this issue is entirely insufficient and unhelpful to this Court. Nonetheless, as quoted above, "the most significant factor guiding a court's analysis of the reasonableness of fees claimed is 'the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *Michigan Immigrant Rights Center*, 2021 WL 855468 at * 7 (quoting *Hensley*, 461 U.S. at 435).  Here, the Court finds that the $1,675 in remaining fees for which Plaintiff is eligible and entitled, is reasonable based on the significance of the documents obtained by Plaintiff from the ONG through its litigation of the instant proceeding. Neither the total amount of the remaining attorneys' fees ($1,675.00) nor any of the specific Billing Chart Entries at issue (Billing Chart Entry Nos. 1, 2, 3, 4, 5, 7, 64, 70, 80, 81, 86, and 116) appear excessive.

Accordingly, the Court finds that Plaintiff's request for $1,675.00 in attorneys' fees for the time reflected in Billing Chart Entry Nos. 1, 2, 3, 4, 5, 7, 64, 70, 80, 81, 86, and 116 is reasonable. The Court therefore awards Plaintiff the total amount of $1,675.00 in attorneys' fees under 5 U.S.C. § 552(a)(4)(E).

### D.      Nye Statement

Lastly, Plaintiff maintains that she recently discovered through discovery in the ongoing state court case that Defendant Brenna Nye gave a statement to the ONG on the night of the incident. (Doc. No. 138. at PageID#s 1370-1371, 1394.)  Plaintiff asserts that the ONG has never produced a copy of Nye's statement and thus it is now "clear that ONG has not fully complied with Plaintiff's

27

FOIA request."  (*Id*. at PageID# 1371.)  Plaintiff therefore asks that the Court (1) reconsider its July 25, 2025 Opinion to the extent it found that Plaintiff's FOIA claim was moot, and (2) "issue an Order requiring the ONG to release Ms. Nye's statement as well as any other documents that may not have been disclosed that were subject to Plaintiff's FOIA claim."  (*Id*.)

In response, the United States argues that this Court should not reopen Plaintiff's FOIA claim because "[n]owhere in her Amended Complaint does [Plaintiff] allege [that] she sought, under FOIA, statements by a civilian named Brenna Nye."  (Doc. No. 139 at PageID# 1411.)  The United States next asserts that "ONG is not currently in possession of a statement by Brenna Nye and cannot provide it to Plaintiff."  (*Id*.)  In support of this assertion, the United States provides the Declaration of LTC Allen C. LaDriere, Chief Legal Counsel/Deputy State Judge Advocate General with the ONG, in which LTC Driere describes the steps he took to search for any statement by Ms. Nye and avers that "to the best of [his] knowledge, the ONG cannot locate" any such statement.  (Doc. No. 139-4 at PageID#s 1422-1423.)   Although Plaintiff filed a Reply Brief, she does not acknowledge or address any of the United States' arguments regarding Ms. Nye's statement in her Reply.  (Doc. No. 141.)

By failing to acknowledge or address the United States' arguments regarding Ms. Nye's statement, Plaintiff has waived the issue.  *See Federal National Mortgage Ass'n v*, 596 F.Supp.3d at 932; *Degolia,* 381 F.Supp.3d at 759–60; *Albury*, 2025 WL 2552164 at * 3; *Notredan, L.L.C.*, 531 Fed. Appx at 569.  Moreover, even if the Court were to consider the issue on the merits, the United States has come forward with evidence that, despite conducting a good faith search, the ONG cannot locate Ms. Nye's statement.  *See* Declaration of LTC LaDriere (Doc. No. 139-4.)  The Court cannot order the ONG to produce something it does not have.  Nor has Plaintiff made any argument or

produced any evidence that the ONG has not conducted a sufficiently diligent search for Ms. Nye's missing statement.

Accordingly, and for all the reasons set forth above, the Court denies Plaintiff's requests that the Court reconsider its July 25, 2025 Opinion to the extent it found that Plaintiff's FOIA claim was moot, and issue an Order requiring the ONG to release Ms. Nye's statement.

## IV.     Conclusion

Accordingly, and for all the reasons set forth this in this Order, Plaintiff's Motion for Attorneys' Fees (Doc. No. 138) is granted in part and denied in part, as follows.  The Court finds that Plaintiff is eligible for and entitled to an award of attorneys' fees under 5 U.S.C. § 552(a)(4)(E) for the time reflected in Billing Chart Entry Nos. 1, 2, 3, 4, 5, 7, 64, 70, 80, 81, 86, and 116 (Doc No. 139-5.)  The Court further finds that Plaintiff's request for $1,675.00 in attorneys' fees for the time reflected in the above Billing Chart Entries is reasonable.  The Court therefore awards Plaintiff the total amount of $1,675.00 in attorneys' fees under 5 U.S.C. § 552(a)(4)(E).

The Court denies Plaintiff's requests that the Court (1) reconsider its July 25, 2025 Opinion to the extent it found that Plaintiff's FOIA claim was moot, and (2) issue an Order requiring the ONG to release Ms. Nye's statement as well as any other documents that may not have been disclosed that were subject to Plaintiff's FOIA claim.

As this is the last remaining issue in this matter, this case is hereby terminated.

**IT IS SO ORDERED.**

Dated: Feb. 9, 2026                              *s/Pamela A. Barker*
                                                 PAMELA A. BARKER
                                                 UNITED STATES DISTRICT JUDGE